## IN THE UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF FLORIDA
## TALLAHASSEE DIVISION

**SUPPORT WORKING**
**ANIMALS, INC., et al.,**

       *Plaintiffs,*

**v.**                   **CASE NO.: 4:19cv570-MW/MAF**

**RON DESANTIS, in his official**
**capacity as Governor of the State**
**of Florida, et al.,**

       *Defendants.*
_____/

## ORDER GRANTING DEFENDANTS' MOTION TO DISMISS

This is a constitutional challenge to a recent amendment to the Florida Constitution prohibiting commercial dog racing in connection with wagering. Plaintiffs allege that the amendment violates the Takings Clause (Count I), the Equal Protection Clause (Count II), the Contracts Clause (Count III), and the Due Process Clause (Count IV). ECF No. 24. Defendants move to dismiss Plaintiffs' Amended Complaint in its entirety. ECF No. 33.

Defendants argue Plaintiffs' claims should be dismissed for lack of subject matter jurisdiction and for failure to state a claim. For the reasons stated below, this Court finds that it has jurisdiction over some, but not all, of Plaintiffs' claims but finds Plaintiffs have failed to plausibly allege the amendment is unconstitutional. Accordingly, Defendants' motion to dismiss is **GRANTED**.

# I.   Legal Standard

This Court accepts the allegations in the Amended Complaint as true and construes them in the light most favorable to Plaintiffs. *See Hunt v. Amico Props., L.P.*, 814 F.3d 1213, 1221 (11th Cir. 2016). "To withstand a motion to dismiss under Rule 12(b)(6), a complaint must include 'enough facts to state a claim to relief that is plausible on its face.' " *Id.* (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). "A 'claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged.' " *Id.* (quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009)). "Plaintiff's allegations must amount to 'more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do.' " *Id.* (quoting *Twombly*, 550 U.S. at 555). This Court limits its "consideration to the well-pleaded factual allegations, documents central to or referenced in the complaint, and matters judicially noticed." *La Grasta v. First Union Sec., Inc.*, 358 F.3d 840, 845 (11th Cir. 2004) (citations omitted).

A Rule 12(b)(1) motion to dismiss for lack of subject matter jurisdiction "can be asserted on either facial or factual grounds." *Carmichael v. Kellogg, Brown & Root Servs., Inc.*, 572 F.3d 1271, 1279 (11th Cir. 2009) (citation omitted). A facial challenge occurs when, as here, Defendants base their challenge to subject matter

jurisdiction solely on the allegations in the Amended Complaint. *Id.* In considering Defendants' facial challenge, this Court must take Plaintiffs' allegations as true. *Id.*

## II.   Factual Background

The pertinent facts, accepted as true and construed in the light most favorable to Plaintiffs, are as follows. Dog racing is part of Florida's pari-mutuel industry. *See* Am. Compl. [ECF No. 24] ¶ 35. The pari-mutuel industry mainly consists of venues conducting pari-mutuel sports such as horse racing and greyhound racing. *See id.* ¶ 60. Greyhound racing has been a legal and thriving industry in Florida since the state legislature legalized gambling on dog races in 1931. *Id.* ¶ 9. Today, a web of state statutes and regulations form a comprehensive regulatory regime governing the industry. *See id.* ¶¶ 9, 35

In the lead-up to the November 2018 General Election, the "stars aligned against the greyhound industry with conservatives and liberals alike using their united political war-chests to deprive the greyhound industry of their livelihoods . . . ." *Id.* ¶ 42. Prominent political figures, the Humane Society of the United States, and the Animal Law Section of the Florida Bar lobbied successfully during the Constitutional Revision Commission process to have an amendment ("Amendment

13") placed on the ballot in the November 2018 General Election. *Id.* ¶¶ 39–45. On November 6, 2018, 69.1% of Florida voters approved Amendment 13.[1] *See id.* ¶ 23.

Amendment 13 is now codified as article X, section 32 of the Florida Constitution. It states:

> The humane treatment of animals is a fundamental value of the people of the State of Florida. After December 31, 2020, a person authorized to conduct gaming or pari-mutuel operations may not race greyhounds or any member of the *Canis Familiaris* subspecies in connection with any wager for money or any other thing of value in this state, and persons in this state may not wager money or any other thing of value on the outcome of a live dog race occurring in this state. The failure to conduct greyhound racing or wagering on greyhound racing after December 31, 2018, does not constitute grounds to revoke or deny renewal of other related gaming licenses held by a person who is a licensed greyhound permitholder on January 1, 2018, and does not affect the eligibility of such permitholder, or such permitholder's facility, to conduct other pari-mutuel activities authorized by general law. By general law, the legislature shall specify civil or criminal penalties for violations of this section and for activities that aid or abet violations of this section.

Consequently, as of January 1, 2021, licensed Florida pari-mutuel operators will be forbidden from racing any dog in Florida in connection with a wager and all persons in Florida will be prohibited from wagering on live dog races which occur in Florida.

---

[1] A proposal requires approval by 60% of the voters to pass. *See* Fla. Const. art. XI, § 5(e). This election result is taken from the Florida Department of State website. *See* https://results.elections.myflorida.com/Index.asp?ElectionDate=11/6/2018&DATAMODE= (last visited April 24, 2020). This Court takes judicial notice of the publicly filed election results, as they are "capable of accurate and ready determination by resort to sources whose accuracy cannot reasonably be questioned." Fed. R. Evid. 201(b)(2); *see Martinez v. Bush*, 234 F. Supp. 2d 1275, 1307 n.36 (S.D. Fla. 2002).

Plaintiffs, owners of businesses in Florida's greyhound racing industry and an organization dedicated to protecting the rights of owners of working animals, assert claims against Defendants Ron DeSantis, in his official capacity as Florida Governor ("the Governor"), Laurel Lee, in her official capacity as Florida Secretary of State ("the Secretary"), and Ashley Moody, in her official capacity as Florida Attorney General ("the Attorney General").

### III.   Jurisdictional Issues

This Court will first explain why this case need not be dismissed for lack of subject-matter jurisdiction. As explained below, Plaintiffs have standing, their claims are ripe for review, and the Eleventh Amendment does not bar Plaintiffs' claims against the Attorney General.[2]

### A. Standing

"Standing 'is the threshold question in every federal case, determining the power of the court to entertain the suit.' " *CAMP Legal Def. Fund, Inc. v. City of Atlanta*, 451 F.3d 1257, 1269 (11th Cir. 2006) (quoting *Warth v. Seldin*, 422 U.S. 490, 499 (1975)). A party has standing to sue if they have suffered an injury in fact

---

[2] While "the Eleventh Amendment is not jurisdictional in the sense that courts must address it *sua sponte*, [the Eleventh Circuit] h[as] held that Eleventh Amendment immunity sounds in jurisdiction since it entitles the recipient to bypass the burdens of litigation." *Curling v. Sec'y of Ga.*, 761 F. App'x 927, 930 (11th Cir. 2019) (per curiam); *see Thomas v. U.S. Postal Serv.*, 364 F. App'x 600, 601 n.3 (11th Cir. 2010) ("[A] dismissal on sovereign immunity grounds should be pursuant to Rule 12(b)(1) because no subject-matter jurisdiction exists.").

which is fairly traceable to the defendant's conduct and which is likely to be redressed by a decision in their favor. *Lujan v. Defs. of Wildlife*, 504 U.S. 555, 560–61 (1992). Defendants claim Plaintiffs have failed to allege any of the three elements of this rule—that is, they contend Plaintiffs have not alleged an injury in fact, have not alleged a causal connection to Defendants' conduct, and have not alleged their claims are redressable. Defendants are incorrect on each point.[3]

Plaintiffs make numerous allegations in the Amended Complaint that demonstrate an injury in fact—namely, the economic loss resulting from their impending inability to operate businesses in the pari-mutuel dog racing industry. *See Adinolfe v. United Techs. Corp.*, 768 F.3d 1161, 1172 (11th Cir. 2014) ("Economic harm . . . [is] a well-established injur[y]-in-fact under federal standing jurisprudence."); *Ford v. Strange*, 580 F. App'x 701, 710 (11th Cir. 2014) (inferring economic harm to employees and associated businesses caused by state law eliminating gambling operations). Plaintiffs' injury is certainly imminent. Amendment 13 sets a date certain—January 1, 2021—on which Plaintiffs will be forbidden from carrying on with their businesses and will face civil or criminal penalties if they fail to comply. *See ACLU of Fla., Inc. v. Miami–Dade Cty. Sch.*

---

[3] Although this Court concludes that Plaintiffs' claims ultimately fail on the merits, "one must not 'confus[e] weakness on the merits with absence of Article III standing.' " *Ariz. State Legislature v. Ariz. Indep. Redistricting Comm'n*, 135 S. Ct. 2652, 2663 (2015) (quoting *Davis v. United States*, 564 U.S. 229, 249 n.10 (2011)).

*Bd.,* 557 F.3d 1177, 1194 (11th Cir. 2009) (standing shown in pre-enforcement challenge where the claimed injury was "pegged to a sufficiently fixed period of time"); *see also Virginia v. Am. Booksellers Ass'n, Inc.*, 484 U.S. 383, 393 (1988) ("We are not troubled by the pre-enforcement nature of this suit. The State has not suggested that the newly enacted law will not be enforced, and we see no reason to assume otherwise. We conclude that the plaintiffs have alleged an actual and well-founded fear that the law will be enforced against them."). Moreover, Plaintiffs are already experiencing the effects of this impending deadline, as their employees have started to leave, presumably in search of jobs in industries that are not scheduled to become illegal within a year. *See* Am. Compl. ¶ 20. Accordingly, Plaintiffs have established "a realistic danger of sustaining a direct injury as a result of [Amendment 13]'s operation or enforcement that is reasonably pegged to a sufficiently fixed period of time and which is not merely hypothetical or conjectural." *See Fla. ex rel. McCollum v. U.S. Dep't of Health & Human Servs.*, 716 F. Supp. 2d 1120, 1147 (N.D. Fla. 2010) (citation and quotation omitted); *Ga. Latino All. for Human Rights v. Governor of Ga.*, 691 F.3d 1250, 1257–58 (11th Cir. 2012) ("When, as here, plaintiffs file a pre-enforcement, constitutional challenge to a state statute, the injury requirement may be satisfied by establishing a realistic danger of sustaining direct injury as a result of the statute's operation or enforcement.") (citation and quotation omitted).

Defendants' arguments regarding the second and third elements of standing are both based on their erroneous contention that none of the Defendants have enforcement authority for Amendment 13 and are therefore neither the cause of Plaintiffs' injuries nor are they able to redress them. "In the context of this pre-enforcement challenge to a legislative enactment, the causation element does not require that the defendants themselves have 'caused' [plaintiffs'] injury by their own acts or omissions in the traditional tort sense; rather it is sufficient that the 'injury is directly traceable to the passage of [the Act].' " *Reprod. Health Servs. v. Strange*, 204 F. Supp. 3d 1300, 1318 (M.D. Ala. 2016) (quoting *Ga. Latino All.*, 691 F.3d at 1260). For the reasons explained below, *see infra* Section III.C, the Attorney General has the authority to enforce Amendment 13, and Plaintiffs' injuries are directly traceable to the passage of Amendment 13. *See id.* (finding causation element satisfied where "the plaintiffs' realistic danger of sustaining direct injury as a result of the defendants' enforcement of the Act is fairly traceable to the operation of the statute"); *Ga. Latino All.*, 691 F.3d at 1260 & n.5 ("Each injury is directly traceable to the passage of [the act] and would be redressed by enjoining each provision.").

Finally, Plaintiffs' injury would be redressed by a judgment declaring Amendment 13 unconstitutional and enjoining its enforcement. *Ga. Latino All.*, 691 F.3d at 1260; *Reprod. Health Servs.*, 204 F. Supp. 3d at 1319 (finding redressability element satisfied where "an order can be fashioned to declare the challenged portions

of the Act unconstitutional and/or enjoin the defendants from criminal enforcement of [the statute] against plaintiffs").

For these reasons, this Court finds that Plaintiffs have sufficiently established standing to bring their claims at this stage of the proceedings.[4]

## B. Ripeness

"Ripeness is peculiarly a question of timing. Its basic rationale is to prevent the courts, through premature adjudication, from entangling themselves in abstract disagreements." *Fla. ex rel. McCollum*, 716 F. Supp. 2d at 1149 (quoting *Thomas v. Union Carbide Agric. Prods. Co.*, 473 U.S. 568, 580 (1985)). "A claim is not ripe for adjudication if it rests upon contingent future events that may not occur as anticipated, or indeed may not occur at all." *Id.* (quoting *Texas v. United States*, 523

---

[4] Defendants do not specifically challenge Plaintiff Support Working Animals' ("SWA") standing. Although only one named Plaintiff needs to have standing for each claim asserted in the Amended Complaint, *see Ga. Latino All.*, 691 F.3d at 1258, this Court will address SWA's standing for the sake of completeness. To establish "associational standing," an organization must establish that "(1) at least one of its members would have standing to bring an individual claim regarding the challenged practice; (2) the interests that the organization seeks to protect 'are germane to the organization's purpose;' and (3) individual participation of each injured party is not indispensable to either the claim brought or the relief sought in the case." *Alumni Cruises, LLC v. Carnival Corp.*, 987 F. Supp. 2d 1290, 1300 (S.D. Fla. 2013) (quoting *Hunt v. Wash. State Apple Advert. Comm'n*, 432 U.S. 333, 343 (1977)). All three elements have been satisfied here. First, SWA alleges that some of its members "own and race dogs in the State of Florida." Am. Compl. ¶ 17. These members have standing for the same reasons as the named individual Plaintiffs. Second, the interests that SWA seeks to protect in challenging Amendment 13 on behalf of its members—certain of whom operate dog racing businesses in Florida and will suffer economic harm if they are forbidden from continuing to operate those businesses after January 1, 2021—are germane to SWA's purpose and mission "to ensur[e] those persons who own . . . working animals . . . are able to continue to have their rights of ownership protected." Am. Compl. ¶ 16. Finally, because SWA seeks injunctive and declaratory relief which, if granted, will benefit its individual members, joinder is generally not required.

U.S. 296, 300 (1998)). "The ripeness inquiry requires a determination of (1) the fitness of the issues for judicial decision, and (2) the hardship to the parties of withholding court consideration." *Life Partners, Inc. v. McCarty*, No. 4:08cv147, 2008 WL 11337548, at *5 (N.D. Fla. Dec. 1, 2008) (citations omitted). "[C]laims are less likely to be considered 'fit' for adjudication when they venture beyond purely legal issues or when they require 'speculation about contingent future events.' " *Id.* (quoting *Pittman v. Cole*, 267 F.3d 1269, 1278 (11th Cir. 2001)).

Because Amendment 13 will not take effect until January 1, 2021, Defendants argue Plaintiffs' claims are unripe because "the future is clouded by the twin unknowns" of what actions Plaintiffs may take in the interim and the nature of the civil or criminal penalties the Florida Legislature will eventually enact pursuant to Amendment 13. ECF No. 33 at 17. "However, '[w]here the inevitability of the operation of a statute against [plaintiffs] is patent, it is irrelevant to the existence of a justiciable controversy that there will be a time delay before the disputed provisions come into effect.' " *Fla. ex rel. McCollum*, 716 F. Supp. 2d at 1149 (quoting *Blanchette v. Conn. Gen. Ins. Corps.*, 419 U.S. 102, 143 (1974)). "The Supreme Court has long . . . held that where the enforcement of a statute is certain, a preenforcement challenge will not be rejected on ripeness grounds." *Id.* (quoting *Fla. State Conf. of the NAACP v. Browning*, 522 F.3d 1153, 1164 (11th Cir. 2008)).

The alleged injury in this case is "certainly impending" as there is no reason whatsoever to doubt that Amendment 13's prohibitions will come into effect on January 1, 2021. *See Babbit v. United Farm Workers Nat'l Union*, 442 U.S. 289, 298 (1979) ("[O]ne does not have to await the consummation of threatened injury to obtain preventative relief. If the injury is certainly impending, that is enough.") (citations and quotations omitted). There is similarly little doubt that the Florida Legislature will ultimately follow the Florida Constitution's requirement that it "shall specify civil or criminal penalties for violations" of Amendment 13.[5] *See Fla. ex rel. McCollum*, 716 F. Supp. 2d at 1149 (finding plaintiffs' challenge to the Affordable Care Act's individual and employer mandates were ripe even though they would not take effect for another four years because "there [was] no reason whatsoever to doubt that the federal government will enforce the [mandates] against plaintiffs") (citing *Pennsylvania v. West Virginia*, 262 U.S. 553, 592–93 (1923)).

Moreover, as Plaintiffs' allegations regarding their employees' departures illustrate, the fact that Amendment 13 does not go into effect until 2021 does not mean that its effects will not be felt in the immediate or very near future. In short,

---

[5] This Court is cognizant that the Florida Legislature did not pass legislation related to Amendment 13 during the 2020 regular session (a bill that would have established a trust fund to compensate persons affected by Amendment 13 died in committee, *see* S.B. 1316, 2020 Leg., Reg. Sess. (Fla. 2020)). The parties have not suggested—nor is this Court aware—that there has been any indication that the Florida Legislature does not intend to comply with Amendment 13's requirements. In any case, the Florida Legislature's inaction does not change the analysis because Amendment 13's sunset provision in and of itself confers standing. *See Fla. ex rel. McCollum*, 716 F. Supp. 2d at 1149.

Amendment 13 "requires an immediate and significant change in the [P]laintiffs' conduct of their affairs with serious penalties attached to noncompliance." *See Abbott Labs v. Gardner*, 387 U.S. 136, 153 (1967). "The Eleventh Circuit has recognized that '[p]otential litigants suffer substantial hardship if they are forced to choose between foregoing lawful activity and risking substantial legal sanctions.' " *Life Partners, Inc.*, 2008 WL 11337548, at *5 (quoting *Cheffer v. Reno*, 55 F.3d 1517, 1524 (11th Cir. 1995)). Plaintiffs have a legitimate interest in and need for determination of the constitutional issues Amendment 13 presents. This action is ripe for judicial determination.

## C. Sovereign Immunity

"Under the Eleventh Amendment, 'a state may not be sued in federal court unless it waives its sovereign immunity or its immunity is abrogated by an act of Congress under section 5 of the Fourteenth Amendment.' "[6] *Osterback v. Scott*, 782 F. App'x 856, 858 (11th Cir. 2019) (quoting *Grizzle v. Kemp*, 634 F.3d 1314, 1319 (11th Cir. 2011)). However, under the legal "fiction" created by the United States

---

[6] Plaintiffs argue Florida waived its sovereign immunity for federal suits "based on violations of the state or federal constitution." Resp. [ECF No. 39] at 7 (citing *Dept't of Revenue v. Kuhnlein*, 646 So. 2d 717 (Fla. 1994) and *Fla. Fish & Wildlife Conservation Comm'n v. Daws*, 256 So. 3d 907 (Fla. 1st DCA 2018). The cases relied upon by Plaintiffs were both filed in state court and involved sovereign immunity under state law, not the Eleventh Amendment. "A state's waiver of immunity from suits filed in state court does not waive immunity of suits filed in federal court." *Camm v. Scott*, 834 F. Supp. 2d 1342, 1348 (M.D. Fla. 2011). Accordingly, this Court finds that Plaintiffs have not established that Florida has waived its Eleventh Amendment immunity as to any of the claims in this case.

Supreme Court in *Ex parte Young*, 209 U.S. 123 (1908), "a suit alleging a violation of the federal constitution against a state official in his official capacity for injunctive relief on a prospective basis is not a suit against the state, and, accordingly, does not violate the Eleventh Amendment." *Osterback*, 782 F. App'x at 858 (quoting *Grizzle*, 634 F.3d at 1319).

But there is an exception to the exception; namely, a plaintiff may not challenge a state law by choosing whichever state official appears most convenient and haling them into federal court under the aegis of 42 U.S.C. § 1983. "Under *Ex parte Young*, a litigant must bring his case 'against the state official or agency responsible for enforcing the allegedly unconstitutional scheme.' " *Id.* at 858–59 (quoting *ACLU v. Fla. Bar*, 999 F.2d 1486, 1490 (11th Cir. 1993)). The state officer in question "must, at a minimum, have some connection with the enforcement of the provision at issue." *Id.* (quoting *Socialist Workers Party v. Leahy*, 145 F.3d 1240, 1248 (11th Cir. 1998)). "Unless the state officer has some responsibility to enforce the statute or provision at issue, the 'fiction' of *Ex parte Young* cannot operate." *Id.* at 859 (quoting *Summit Med. Assocs., P.C. v. Pryor*, 180 F.3d 1326, 1341 (11th Cir. 1999)). "Where the named defendant lacks any responsibility to enforce the statute at issue, 'the state is, in fact, the real party in interest,' and the suit remains prohibited by the Eleventh Amendment." *Id.* (quoting *Summit Med. Assocs.*, 180 F.3d at 1341).

13

Defendants, state officials sued in their official capacities, assert that they are immune from suit under the Eleventh Amendment and are therefore not proper parties. Defendants argue (1) they have no enforcement authority because Amendment 13 is "self-executing" and there is no statute for them to enforce until the Florida Legislature enacts civil or criminal penalties,[7] and (2) once the Florida Legislature has specified these penalties, Defendants will still lack enforcement authority because they do not have specific enforcement duties with respect to any gambling-related activities in Florida. *See* ECF No. 33 at 6.

For the following reasons, this Court concludes the Governor and the Secretary are immune from suit under the Eleventh Amendment and are therefore not proper parties to this suit. The Attorney General, however, is a proper defendant under *Ex parte Young* because of her authority to enforce Amendment 13's proscriptions.

---

[7] This Court is troubled by the implications of Defendants' argument. It would be a peculiar loophole in American law if the Eleventh Amendment immunized a patently unconstitutional state law from a constitutional challenge in federal court simply because the law is "self-executing." *See* ECF No. 33 at 7, 8, 12, 15. If this were the law, states could legislate around *Ex parte Young*'s protections. *See Curling*, 761 F. App'x at 931 ("The Supreme Court has explained that *Ex parte Young* 'gives life to the Supremacy Clause' and has armed plaintiffs with the 'sword' of the 'Civil War Amendments' to contest ongoing violations by the states.") (citations omitted); *cf. Allied Artists Picture Corp. v. Rhodes*, 679 F.2d 656, 665 n.5 (6th Cir. 1982) ("Were this action unavailable to the plaintiffs, they would be unable to vindicate the alleged infringement of their constitutional rights without first violating an Ohio statute requiring a significant change in their business conduct. Such a result is clearly what the doctrine in *Ex parte Young* was in part designed to avoid.").

### The Governor

Plaintiffs argue the Governor is a proper party because (1) "it is the Governor's duty to take care that the laws of the state of Florida are faithfully followed and executed" and (2) the Governor "has clearly demonstrated his vested power to intervene, revise and delay the implementation of" Amendment 13 as demonstrated in the Governor's "fight against" Amendment 4, an amendment passed under the same constitutional amendment mechanism. Am. Compl. ¶ 26; *see also* Resp. at 8–9. With respect to Plaintiffs' first point, "the Governor's constitutional and statutory authority to enforce the law and oversee the executive branch do not make him a proper defendant under *Ex parte Young*." *Osterback*, 782 F. App'x at 859; *see Women's Emergency Network v. Bush*, 323 F.3d 937, 949–50 (11th Cir. 2003) (finding Florida Governor's responsibility over the Department of Highway Safety and Motor Vehicles "too attenuated to establish" the Governor's responsibility for the challenged law). As to Plaintiffs' second point, the Governor's ability to publicly criticize a constitutional amendment and to sign bills into law that may be perceived as intended to "revise and delay" its implementation is separate and distinct from any power of *enforcement* sufficient to make the Governor a proper party under *Ex parte Young*. *Cf. Women's Emergency Network*, 323 F.3d at 950 ("Under the doctrine of absolute legislative immunity, a governor cannot be sued for signing a bill into law."). Thus, because the Governor's general executive power

does not "connect[] him with the duty of enforc[ing]" Amendment 13, he is not a proper defendant here. *See Ex parte Young*, 209 U.S. at 161. Consequently, the Eleventh Amendment bars Plaintiffs' claims against the Governor, and this Court is therefore without jurisdiction over those claims. Plaintiffs' claims against the Governor must therefore be dismissed.

## The Secretary

The Secretary is a closer call. She argues she has no authority to enforce Amendment 13 and "has no duties related to racing of any animal or gambling of any kind." ECF No. 33 at 8. But *Ex parte Young* does not require a grant of explicit enforcement authority. Rather, it requires "some connection with the enforcement of the act." 209 U.S. at 157; *cf. Papasan v. Allain*, 487 U.S. 265, 282 n.14 (1986) (Mississippi Secretary of State responsible for "general supervision" of administration by local school officials of lands set aside for educational purposes could be enjoined under *Ex parte Young* exception in suit alleging violation of equal protection in distribution of funds from land); *Curling*, 761 F. App'x at 932 n.3 (rejecting distinction between " 'enforcing the law' (in the sense of administering it) and 'enforcing the law' (in the sense of prosecuting someone)" and finding *Ex parte Young* doctrine applicable because "[b]oth actions can cause harm if they are done in a manner that flouts federal law"); *Ga. Latino All.*, 691 F.3d at 1260 n.5 (rejecting state officials' argument that *Ex parte Young* doctrine did not apply because they

16

lacked specific enforcement authority over challenged state law criminalizing certain conduct in aid of undocumented immigrants).

The Secretary is the custodian of Florida's original statutes and records, *see* §§ 15.01, 15.02, & 20.10, Fla. Stat. (2019), and the official in charge of the department tasked with "general supervision and administration" of "corporation laws and such other such laws as are placed under it by the Legislature" and with classifying, numbering, and furnishing copies of Florida's laws. *See* §§ 15.13, 15.155, Fla. Stat. (2019). She would therefore seem to possess the requisite connection with the enforcement of the "civil or criminal penalties" that will compel compliance with Amendment 13.[8] Moreover, Florida case law supports the conclusion that the Secretary of State is a proper party against whom to grant relief if Amendment 13 is indeed unconstitutional. *See, e.g.*, *Murray v. Lewis*, 576 So. 2d 264, 266 (Fla. 1990) (declaring statute unconstitutional and directing the Florida

---

[8] Indeed, when questioned at oral argument by the Eleventh Circuit panel in a separate case challenging the constitutionality of Florida's ballot order statute, the Secretary took the position that local officials charged with the clerical task of preparing and printing ballots—rather than the Secretary in her role as Florida's "chief election officer"—would be proper defendants to a constitutional challenge to that law. Oral Argument at 1:58–6:56, 34:40–36:45, Jacobson v. Fla. Sec'y of State, (Feb. 12, 2020) (No. 19-14552), http://www.ca11.uscourts.gov/oral-argument-recordings?title=&field_oar_case_name_value=jacobson&field_oral_argument_date_value%5Bvalue%5D%5Byear%5D=2020&field_oral_argument_date_value%5Bvalue%5D%5Bmonth%5D=2. If a local official's clerical duty to prepare and print ballots suffices to make that official a proper defendant in that case, then surely the Secretary's clerical duty to classify, number, and furnish copies of Florida's laws would make her a proper defendant here.

Secretary of State to expunge it); *Dickinson v. Stone*, 251 So. 2d 268, 274 (Fla. 1971) (same).

Despite these powers and responsibilities, a finding that the Secretary is a proper defendant would run afoul of the concerns raised in the Eleventh Circuit's recent en banc decision in *Lewis v. Governor of Alabama*, 944 F.3d 1287 (11th Cir. 2019). In that case, the plaintiffs brought claims against Alabama state officials, including Alabama's Attorney General, challenging the constitutionality of a statute that prohibited employers from paying wages higher than state or federal law mandated. 944 F.3d at 1292. The Eleventh Circuit held that the plaintiffs lacked standing because they "failed to establish that their injuries . . . [were] fairly traceable to the Attorney General's conduct or that those injuries would be redressed by a decision in their favor." *Id.* at 1306. The court rejected the plaintiffs' reliance on a provision of the Alabama Code that generally authorized the Alabama Attorney General to institute and prosecute civil actions in the name of the state when necessary to protect the state's rights and interests. *See id.* at 1300. The court reasoned that "if that statute's general authorization were sufficient to confer standing to sue the Attorney General for *any* violation of *any* Alabama law that regulates the relationships between private parties . . . then the Attorney General could be made a proper party defendant under innumerable provisions of the Alabama Code." *Id.*

18

The Eleventh Circuit's reasoning in *Lewis* is instructive here. While the court declined to consider whether the Alabama Attorney General was a proper defendant under *Ex parte Young*, *see id.* at 1296, "the requirements of *Ex parte Young* overlap significantly with the last two standing requirements—causation and redressability." *Doe v. Holcomb*, 883 F.3d 971, 975–76 (7th Cir. 2018); *see Cressman v. Thompson*, 719 F.3d 1139, 1146 n.8 (10th Cir. 2013) ("[T]here is a common thread between Article III standing analysis and *Ex parte Young* analysis[.]") (citing *Planned Parenthood of Idaho, Inc. v. Wasden*, 376 F.3d 908, 919 (9th Cir. 2004)). Thus, applying the Eleventh Circuit's analysis of the plaintiffs' standing in *Lewis* to the related *Ex parte Young* analysis here, this Court finds the Secretary is not a proper defendant. If the Secretary's general supervisory and administrative powers and her authority to expunge unconstitutional laws from the official records of the state constituted a sufficient "connection" to the enforcement of a challenged law for purposes of *Ex parte Young*, then the Secretary would *always* be a proper defendant to cases challenging the constitutionality of Florida law. The *Ex parte Young* exception would swallow the Eleventh Amendment rule of state sovereign immunity. While "[t]his would be a very convenient way for obtaining a speedy judicial determination of questions of constitutional law," it is contrary to "the fundamental principle that [the states] cannot, without their assent, be brought into

any court at the suit of private persons." *See Summit Med. Assocs.*, 180 F.3d at 1342 (quoting *Fitts v. McGhee*, 172 U.S. 516, 530 (1899)).

Accordingly, guided by the reasoning articulated in *Lewis*, this Court concludes the Eleventh Amendment bars Plaintiffs' claims against the Secretary. This Court is therefore without jurisdiction over Plaintiffs' claims against the Secretary and those claims must be dismissed.

<u>The Attorney General</u>

The Attorney General argues she is not a proper defendant because it will be Florida's state attorneys' responsibility to enforce any statutory penalties for violations of Amendment 13. ECF No. 33 at 11. It is true that Florida's Constitution provides that each "state attorney shall be the prosecuting officer of all trial courts in [her] circuit . . . ." Fla. Const. art. V, § 17. But the Attorney General is charged with "exercis[ing] a general superintendence and direction over the several state attorneys . . . as to the manner of discharging their respective duties . . . ." § 16.08, Fla. Stat. (2019). The Attorney General's authority to superintend and direct the state attorneys constitutes a sufficient connection to the enforcement of the forthcoming statutory penalties for violations of Amendment 13 for purposes of *Ex parte Young*. *Cf. GeorgiaCarry.Org, Inc. v. Georgia*, 687 F.3d 1244, 1254 (11th Cir. 2012) ("Part of the Governor's job is to ensure the enforcement of Georgia's statutes. He is subject to suit under § 1983, and the District Court properly entertained Plaintiffs'

20

allegations against him."); *Luckey v. Harris*, 860 F.2d 1012, 1016 (11th Cir. 1988) (finding Georgia's Governor's responsibility for law enforcement, residual power to commence criminal prosecutions, and final authority to direct Georgia's Attorney General to institute and prosecute on behalf of the state made him subject to suit under § 1983); *Reprod. Health Servs.*, 204 F. Supp. 3d at 1318, 1332 (finding Alabama Attorney General's "statutory authority to 'superintend and direct' criminal prosecutions statewide and the responsibility to instruct the [Alabama district attorneys]" made him subject to suit under § 1983 "in light of the criminal enforcement provision" of the challenged statute).

Additionally, as the Attorney General concedes, she is Florida's chief legal officer and is "vested with broad authority to act in the public interest and, when she deems it necessary, to defend statutes against constitutional attack." ECF No. 33 at 11. The Attorney General has the statutory duty to "appear in and attend to, in behalf of the state, all suits or prosecutions, civil or criminal or in equity, in which the state may be a party, or in anywise interested in the Supreme Court and district courts of appeal of this state . . . [and] in any other of the courts of this state . . . or of the United States." § 16.01(4)–(5), Fla. Stat. (2019). Even absent an express grant of statutory authority, the Attorney General has "the common law power to institute lawsuits to protect the public interest . . . ." *Florida v. Memberworks, Inc.*, No. 8:03-cv-2267, 2003 WL 27374081, at *3 (M.D. Fla. Dec. 23, 2003) (citing *Fla. ex rel.*

*Shevin v. Exxon Corp.*, 526 F.2d 266, 274 (5th Cir. 1976)); [9] *see also Fla. ex rel. Shevin*, 526 F.2d at 270 ("[I]t is the inescapable historic duty of the Attorney General, as the chief state legal officer, to institute, defend, or intervene in any litigation or quasijudicial administrative proceeding which he determines in his sound official discretion involves a legal matter of compelling public interest."); *Thompson v. Wainwright*, 714 F.2d 1495, 1500 (11th Cir. 1983) ("By Florida judicial decisions, the grant of specific state powers to the attorney general does not deprive him of the powers belonging to him under the common law . . . .").

District courts in Florida have split on the issue of whether the Attorney General's powers under Florida law constitute a sufficient "connection" to the enforcement of a challenged criminal statute for purposes of *Ex parte Young*. Some courts have concluded that the Attorney General's discretionary authority to participate and be heard on matters affecting the constitutionality of a statute is an insufficient "connection" to the enforcement of that statute for purposes of *Ex parte Young* and that it is instead the state attorney with direct enforcement authority that is the proper defendant. *See Roberts v. Bondi*, No. 8:18-cv-1062, 2018 WL 3997979, at *2 (M.D. Fla. Aug. 21, 2018) ("[The Attorney General] is 'entitled to be heard' when a state statute is challenged as unconstitutional . . . . But that does not mean

---

[9] In *Bonner v. City of Prichard*, 661 F.2d 1206, 1209 (11th Cir. 1981) (*en banc*), the Eleventh Circuit adopted as binding precedent the decisions of the former Fifth Circuit handed down prior to October 1, 1981.

enforcing this statute is her duty for *Ex parte Young* purposes."); *Freiberg v. Francois*, No. 4:05cv177, 2006 WL 2362046, at *6 nn.1–2 (N.D. Fla. Aug. 15, 2006) (adopting magistrate's report and recommendation). On the other hand, courts that have determined the Attorney General to be a proper defendant to such a lawsuit have found the Attorney General's statutory and common law duties to institute legal proceedings to protect the public interest and to enforce state statutes satisfy the requirements of the *Ex parte Young* doctrine. *See Teltech Sys., Inc. v. McCollum*, No. 08-61664-CIV, 2009 WL 10668266, at *1–2 (S.D. Fla. June 30, 2009); *see also Citizens for Equal Prot. v. Bruning*, 455 F.3d 859, 864 (8th Cir. 2006) (holding Nebraska's Attorney General was proper defendant to suit challenging a Nebraska constitutional amendment invalidating same-sex marriages because the Attorney General possessed "broad powers to enforce the State's constitution and statutes," including "policing compliance with this constitutional amendment"), *abrogated on other grounds by Obergefell v. Hodges*, 135 S. Ct. 2584 (2015).

This Court finds the *Teltech* court's reasoning to be persuasive. The Attorney General wields broad statutory and common law authority to enforce Florida law, including the authority to police compliance with Amendment 13 and to enforce the forthcoming civil or criminal penalties. This Court has no quarrel with the notion that, standing alone, the Attorney General's discretionary authority to intervene in cases where the constitutionality of a statute is challenged is insufficient to make her

a proper defendant under *Ex parte Young*. But in cases where, as here, she will have the authority to directly enforce the challenged law, the Attorney General falls within the *Ex parte Young* exception. *See Teltech Sys., Inc.*, 2009 WL 10668266, at *2; *Ex parte Young*, 209 U.S. at 157 ("The fact that the state officer, by virtue of his office, has *some connection* with the enforcement of the act, is the important and material fact, and *whether it arises out of the general law, or is specially created by the act itself, is not material so long as it exists*.") (emphasis added); *see also* 209 U.S. at 158 (sufficient connection "might exist by reason of the general duties of the officer to enforce . . . [the challenged law] as a law of the state"); *cf. Socialist Workers Party*, 145 F.3d at 1246 (finding a "credible threat of prosecution" and standing to sue the Florida Secretary of State, even after she "disavow[ed] . . . authority to enforce [the law at issue]," because she "ha[d] the power" to enforce the law).

Importantly, the concerns raised by the Eleventh Circuit in *Lewis* are not present here. The challenged statute in *Lewis* "provide[d] for no enforcement mechanism whatsoever" and instead contemplated private lawsuits between employers and employees. 944 F.3d at 1299; *see id.* at 1300 n.10 (noting the challenged statute "do[es'nt] contemplate state enforcement but, rather, merely regulate[s] the everyday relationships between private parties"). In contrast, Amendment 13 does not provide a private right of action to enforce its prohibition on the pari-mutuel dog racing industry. Instead, Amendment 13 expressly directs the

Florida Legislature to "specify civil or criminal penalties for violations of this section and for activities that aid or abet violations of this section." Thus, unlike the Alabama Attorney General in *Lewis*, the Attorney General will have the authority to "institute[e] a prosecution under—or otherwise affirmatively enforc[e]" Amendment 13's proscriptions. *See id.* at 1301; *cf. Summit Med. Assocs.*, 180 F.3d at 1341 (holding "[t]he Eleventh Amendment bars Appellee's challenge to the *private* civil enforcement provision of the partial-birth abortion statute" because *Ex parte Young* applies "[o]nly if a state officer has the authority to enforce an unconstitutional act in the name of the state").

It is therefore not the case that the Attorney General "plays no role in enforcing" Amendment 13. ECF No. 33 at 11. To the contrary, the Attorney General could "superintend and direct" the state attorneys to bring prosecutions under Amendment 13's forthcoming civil or criminal penalties, §16.08, Fla. Stat.; she could independently institute such prosecutions, *see Memberworks, Inc.*, 2003 WL 27374081, at *3; and she could intervene in the trial of the case or on appeal, § 16.01(4)–(5), Fla. Stat. That is sufficient to bring Plaintiffs' claims against her within *Ex parte Young*.

Moreover, finding the Attorney General to be a proper defendant in this case is consistent with decades of Supreme Court precedent finding standing in preenforcement constitutional challenges to state laws. *See, e.g., Susan B. Anthony*

*List v. Driehaus*, 573 U.S. 149, 158–61 (2014); *see Doe*, 883 F.3d at 975–76 (noting overlap between standing and *Ex parte Young*). The *Ex parte Young* doctrine does not demand that Plaintiffs wait until their dog racing businesses become illegal on January 1, 2021 to see which state official—be it the Attorney General acting in her discretion or a state attorney—brings an enforcement action before challenging Amendment 13's validity. *See Summit Med. Assocs.*, 180 F.3d at 1138. While other state officials may eventually be charged to enforce Amendment 13, that does not mean that the Plaintiffs must sit on their hands until that day comes. *See GeorgiaCarry.Org, Inc.*, 687 F.3d at 1254 n.18 (finding Georgia Governor to be proper defendant even though "other local officials, who are charged specifically to enforce the law, would certainly be more appropriate defendants").

For these reasons, the Eleventh Amendment does not bar Plaintiffs' claims against the Attorney General.

## IV.   Adequacy of Plaintiffs' Claims

Having determined Plaintiffs' claims against the Attorney General are not due to be dismissed pursuant to Rule 12(b)(1) for lack of subject-matter jurisdiction, this Court now turns to the sufficiency of Plaintiffs' allegations under Rule 12(b)(6).

### A. Takings Clause Claim (Count I)

Plaintiffs claim that the enactment of Amendment 13 effected a "taking" under the Fifth and Fourteenth Amendments because it deprived Plaintiffs of

"substantially all economically beneficial or productive use of their property and return on their investments." Am. Compl. ¶¶ 58, 63. The Taking Clause of the Fifth Amendment, applicable to the States through the Fourteenth Amendment, prohibits the government from taking private property for public use without just compensation.[10] U.S. Const. amend. V.; *see Murr v. Wisconsin*, 137 S. Ct. 1933, 1942 (2017). A takings claim is evaluated under a two-part analysis. *See Givens v. Ala. Dep't of Corrs.*, 381 F.3d 1064, 1066 (11th Cir. 2004). First, the court must determine whether the claimant has identified a cognizable Fifth Amendment property interest that is asserted to be the subject of the taking. *Id.* Second, if the court concludes that a cognizable property interest exists, it then determines "whether the deprivation or reduction of that interest constitutes a 'taking.' " *Id.*

Defendants argue Plaintiffs fail to state a claim under the Takings Clause because Plaintiffs (1) have not identified a constitutionally protected property interest with which Amendment 13 interferes; (2) have not alleged a per se taking; and (3) to the extent Plaintiffs bring an as-applied challenge to Amendment 13, Plaintiffs have failed to allege the necessary elements to state a claim. Plaintiffs respond that they have adequately pled the "general principles governing the Takings Clause" and that discovery is required for a proper analysis of the factors

---

[10] For ease of exposition, this Court hereinafter refers only to the Fifth Amendment in discussing Plaintiffs' takings claim; however, these references should be interpreted to mean takings claims under the Fifth and Fourteenth Amendments.

for as-applied takings claims outlined in *Penn Central Transportation Co. v. City of New York*, 438 U.S. 104 (1978).

First, this Court finds that Plaintiffs have adequately alleged a constitutionally protected property interest. "The Takings Clause protects private property; it does not create it." *Givens*, 381 F.3d at 1066. This Court therefore looks to Florida law to evaluate Plaintiffs' property interests. *See id.* at 1066 ("Thus, to determine whether a particular property interest is protected, we look to 'existing rules or understandings that stem from an independent source such as state law.' ") (quoting *Phillips v. Wash. Legal Found.*, 524 U.S. 156, 164 (1998)). Plaintiffs identify two property interests affected by Amendment 13: (1) their "business[es] and income," *see* Am. Compl. ¶ 21; and (2) their dogs, *see* Am. Compl. ¶¶ 3, 46–51; *see also* Resp. at 13 ("Plaintiffs assert their property rights in their greyhound racing dogs along with the personal property functionally integrated in nature to the racing activity sought to be prohibited by Amendment 13."). Under Florida law, Plaintiffs possess a cognizable Fifth Amendment property interest in their personal property, including their dogs and other dog racing-related personal property. *See State v. Basford*, 119 So. 3d 478, 482 (Fla. 1st DCA 2013) (recognizing property interest in tangible

28

personal property and improvements); *see also State v. Milewski*, 194 So. 3d 376, 378 (Fla. 3d DCA 2016) (animals are personal property).[11]

Despite adequately identifying a cognizable Fifth Amendment property interest, Plaintiffs have failed to allege a compensable "taking" of their dogs or dog racing-related property. The Takings Clause does not require compensation unless private property has been taken "for public use." U.S. Const. amend. V. It is well-settled that there is no taking for "public use" where the government acts pursuant to its police power. *See Keystone Bituminous Coal Ass'n v. DeBenedictis*, 480 U.S. 470, 491 (1987) (" '[A]ll property in this country is held under the implied obligation that the owner's use of it shall not be injurious to the community,' and the Takings Clause did not transform that principle to one that requires compensation whenever the State asserts its power to enforce it.") (citation omitted); *Goldblatt v. Town of Hempstead*, 369 U.S. 590, 592 (1962) ("If this ordinance is otherwise a valid exercise of the town's police powers, the fact that it deprives the property of its most

---

[11] To the extent Plaintiffs assert they possess a constitutionally protected property interest in the continued operation of their dog-racing businesses, Plaintiffs' participation in the dog-racing business is a privilege and is not a legal right. § 550.1625(1), Fla. Stat. (2019) ("The operation of a dog track and legalized pari-mutuel betting at dog tracks in this state is a privilege . . . ."); *see State ex rel. Biscayne Kennel Club v. Stein*, 178 So. 133, 135 (Fla. 1938) ("racing [of dogs] in Florida is not a right but a privilege;" "[a] license" to race dogs is not a "property right, nor does it create a vested right"). Therefore, Plaintiffs do not possess a constitutionally protected property interest in their licenses to engage in pari-mutuel dog racing. *Cf. Maloney Gaming Mgmt., LLC v. Parish of St. Tammany*, No. 10-1582, 2010 WL 5023074, at *6 (E.D. La. Sept. 9, 2010) (dismissing regulatory takings claim because the plaintiff's gaming license was not a constitutionally protected property interest under Louisiana law), *aff'd*, 456 F. App'x 336 (5th Cir. 2011).

beneficial use does not render it unconstitutional."); *Sentell v. New Orleans & C.R. Co.*, 166 U.S. 698, 704 (1897) ("Even if it were assumed that dogs are property in the fullest sense of the word, they would still be subject to the police power of the state, and might be destroyed or otherwise dealt with, as in the judgment of the legislature is necessary for the protection of its citizens."); *Mugler v. Kansas*, 123 U.S. 623, 668–69 (1887) ("A prohibition simply upon the use of property for purposes that are declared, by valid legislation, to be injurious to the health, morals, or safety of the community, cannot, in any just sense, be deemed a taking or an appropriation of property for the public benefit."); *see also Pompano Horse Club v. State*, 111 So. 801, 807 (Fla. 1927) (enjoining horse racing under nuisance law "operates not to deprive an owner of his property in the constitutional sense . . . and though such action may impair the value of the property, it is not for that reason obnoxious to constitutional guaranties").

The enactment of Amendment 13 represents a valid exercise of Florida's police power and is therefore not a "taking." Through Amendment 13, Florida has prohibited Plaintiffs' property from being used in a particular manner that the State has determined to be contrary to the health, morals, or safety of the community. Whether Amendment 13's purpose was to protect the health and welfare of racing dogs or to prohibit wagering on dog races, Amendment 13 is a legitimate exercise of Florida's police power. *See Gulfstream Park Racing Ass'n, Inc. v. Tampa Bay*

*Downs, Inc.*, 399 F.3d 1276, 1278 (11th Cir. 2005) ("The regulation of gambling lies at the heart of the state's police power.") (citation and quotation omitted); *Maryeli's Lovely Pets, Inc. v. City of Sunrise*, No. 14-61391, 2015 WL 11197773, at *4 (S.D. Fla. June 25, 2015) ("Protecting the health and welfare of domestic animals is a legitimate governmental interest; indeed, courts around the country have so held."); *see also Porter v. DiBlasio*, 93 F.3d 301, 310 (7th Cir. 1996) ("The seizure and disposal of neglected animals falls squarely within the state's police power. . . . As such, the state's disposal of neglected animals falls within the class of property deprivations for which the Fifth Amendment does not require compensation."). Accordingly, Amendment 13 does not constitute a compensable taking under the Fifth Amendment. *See, e.g.*, *Roberts*, 2018 WL 3997979, at *3–4 (dismissing Takings Clause claim based on Florida statute prohibiting possession of bump-fire stocks because the statute "is an exercise of the legislative police power"); *Wilson v. Sarasota County*, No. 8:10-cv-0489, 2011 WL 5117566, at *2 (M.D. Fla. Oct. 25, 2011) (dismissing Takings Clause claim based on seizure of plaintiffs' neglected dogs because "no compensation is due when the seizure is necessary to abate a nuisance, to protect the public health, or to prevent the dogs from injuring the rights of others"); *Pope v. City of Atlanta*, 418 F. Supp. 665, 668–69 (N.D. Ga. 1976) (dismissing Takings Clause claim based on Georgia statute that prohibited construction of a tennis court on plaintiff's property because no compensation by the

state is due "[w]here certain uses of the property are prohibited in a reasonable and non-arbitrary manner by legislative regulations enacted for the public health, morals and safety"), *aff'd*, 575 F.2d 298 (5th Cir. 1978); *Holliday v. Governor of S.C.*, 78 F. Supp. 918, 925 (W.D.S.C. 1948) (denying injunction and dismissing takings claim challenging South Carolina law prohibiting certain gambling machines because "the statute in this case is clearly a valid exercise of the police power of the State"), *aff'd*, 335 U.S. 803 (1948);[12] *cf. Ass'n of N.J. Rifle & Pistol Clubs, Inc. v. Att'y Gen. N.J.*, 910 F.3d 106, 123 n.32 (3d Cir. 2018) ("New Jersey's [ban on high capacity magazines] seeks to protect public safety and is therefore not a taking at all."); *Holliday Amusement Co. of Charleston, Inc. v. South Carolina*, 493 F.3d 404, 411 n.2 (4th Cir. 2007) (on summary judgment, finding state statute outlawing possession of video gaming machines did not effect a taking and observing that regulations for the public good in heavily regulated fields such as gambling "per se do not constitute takings"); *Club Gallístico de P.R. Inc. v. United States*, 414 F. Supp. 3d 191, 212 (D.P.R. 2019) (on summary judgment, finding amendments to federal statute prohibiting cockfighting in Puerto Rico constituted a reasonable exercise of Congress' police power and therefore did not violate the Takings Clause).

---

[12] This Court "[is] bound by the Supreme Court's summary determinations." *Hand v. Scott*, 888 F.3d 1206, 1208 (11th Cir. 2018).

Even assuming, arguendo, the "police power doctrine" were not fatal to Plaintiffs' takings claim, their claim would still fail for additional, independent reasons. First, Plaintiffs have failed to state a claim for a per se taking. A per se regulatory taking occurs where a regulation "denies all economically beneficial or productive use of land." *Murr*, 137 S. Ct. at 1942; *Lucas v. S.C. Coastal Council*, 505 U.S. 1003, 1030 (1992)). Even assuming, without deciding, that the per se rule established in *Lucas* is not limited to real property,[13] Plaintiffs fail to plausibly allege that Amendment 13 takes away "*all* economically beneficially uses" of their dog racing-related property. The Supreme Court has expressly limited the application of this categorical rule to "the 'extraordinary case' in which a regulation permanently deprives property of *all value*." *Tahoe-Sierra Preservation Council, Inc. v. Tahoe Reg'l Planning Agency*, 535 U.S. 302, 331 (2002) (emphasis added). Plaintiffs allege

---

[13] On their face, the terms employed by the Supreme Court in *Lucas* indicate that its holding is indeed limited to regulations affecting land. *See Lucas*, 505 U.S. at 1119 (describing its holding as pertaining to "owner[s] of real property" and "the case of land"); *see also Horne v. Dep't of Agric.*, 135 S. Ct. 2419, 2427 (2015) ("*Lucas* recognized that while an owner of personal property 'ought to be aware of the possibility that new regulation might render his property economically worthless,' such an 'implied limitation' was not reasonable in the case of land."). The Eleventh Circuit, however, has not expressly addressed the question of whether the per se rule established in *Lucas* is limited to real property. *See Vesta Fire Ins. Corp. v. Florida*, 141 F.3d 1427, 1431 (11th Cir. 1998) (implying the per se rule may be applicable to regulatory taking of other types of property) (citing *New Port Largo, Inc. v. Monroe County*, 95 F.3d 1084, 1089 (11th Cir. 1996)). Other circuits have divided on the scope of *Lucas*'s limitation on a state's police power. *Compare Duncan v. Becerra*, 742 F. App'x 218, 220–21 (9th Cir. 2018) (affirming district court's reliance on *Lucas* to reject California's police power justification for its regulation of personal property) *with Holliday Amusements Co.*, 493 F.3d at 411 n.2 (finding *Lucas* test inapplicable to personal property).

that they can no longer use their dogs and other dog racing-related personal property to earn income from wagering on dog racing. But "loss of future profits— unaccompanied by any physical property restriction—provides a slender reed upon which to rest a takings claim." *Andrus v. Allard*, 444 U.S. 51, 66 (1979). The Amended Complaint neither alleges that Amendment 13 "compel[s] the surrender of" Plaintiffs' property, nor that it constitutes a "physical invasion or restraint upon them." *See id.* at 65. Construing Plaintiffs' allegations in the most favorable light, Plaintiffs have merely alleged Amendment 13 prevents the most profitable use of their property. But "the destruction of one 'strand' of the bundle [of property rights] is not a taking." *See id.* at 66. It cannot be reasonably deduced from Plaintiffs' allegations that Plaintiffs were deprived of *all* economically beneficial or productive use of their property or that their property was rendered essentially worthless. *Cf. Duncan v. Becerra*, 265 F. Supp. 3d 1106, 1138 (S.D. Cal. 2017) (finding California statute depriving plaintiffs "not just of the *use* of their property, but of *possession*" constituted a cognizable per se regulatory taking), *aff'd*, 742 F. App'x 218 (9th Cir. 2018). Nothing in the Amended Complaint plausibly alleges facts that would preclude other economically beneficial uses of Plaintiffs' dog racing-related property. *Cf. N. Shore Kennel of Lynn, Inc. v. Commonwealth*, 965 N.E.2d 899 (table) (Mass. App. Ct. 2012) (unpublished) ("Despite the conclusory assertion contained in their complaint, the plaintiffs have made no allegations to support a

conclusion that the economic utility of their dogs, and of the other equipment they own in connection with their dog breeding business, is rendered essentially without economic value."). Plaintiffs have therefore failed to state a claim for a per se regulatory taking. *See Set Enters., Inc. v. City of Hallandale Beach*, No. 09-61405, 2010 WL 11549687, at *34 (S.D. Fla. June 22, 2010) (recommending dismissal of takings claim where "[n]othing in the Complaint alleges facts that would preclude such [alternative] beneficial uses" of plaintiffs' property), *report and recommendation adopted*, 2010 WL 11549672, at *1 (S.D. Fla. Aug. 11, 2010); *see also Van Way v. City-Parish Council of Lafayette*, 67 F. App'x 251, 251 (5th Cir. 2003) (affirming dismissal of plaintiff's takings claim because, "[a]s [plaintiff] does not assert that either the land or the motorcycles would lose all economically viable use as a result of the ordinance, this claim is wholly unsubstantial and frivolous"); *cf. Club Gallístico de P.R. Inc.*, 414 F. Supp. 3d at 212 ("Even if [a law] prevent[s] the most profitable use of Plaintiffs' properties because their value is reduced, this does not necessarily equate to a taking.").

Second, Plaintiffs have also failed to allege facts sufficient to demonstrate an as-applied regulatory taking under the test articulated in *Penn Central*. In that case, the Supreme Court recognized three factors that should be considered to identify an as-applied regulatory taking: (1) the economic impact of the regulation on the plaintiff; (2) the extent to which the regulation interferes with the plaintiff's

investment-backed expectations; and (3) the character of the governmental action. 438 U.S. at 124; *accord Vesta Fire Ins. Corp.*, 141 F.3d at 1431. The second *Penn Central* factor "is generally implicated where a government regulation affects a person's economic expectations in a way that could not have been anticipated by prior legislation." *Nat'l Viatical, Inc. v. Oxendine*, No. 1:05-CV-3059, 2006 WL 1071839, at *4 (N.D. Ga. April 20, 2006) (citing *Vesta Fire Ins. Corp.*, 141 F.3d at 1432), *aff'd per curiam*, 221 F. App'x 899 (11th Cir. 2007). A property owner's investment-backed expectations must be reasonable to sustain a regulatory taking claim. *See Palazzolo v. Rhode Island*, 533 U.S. 606, 635 (2001) (O'Connor, J., concurring) ("[T]he regulatory regime in place at the time the claimant acquires the property at issue helps to shape the reasonableness of those expectations."). For this reason, "[t]hose who do business in the regulated field cannot object if the legislative scheme is buttressed by subsequent amendments to achieve the legislative end." *Vesta Fire Ins. Corp.*, 141 F.3d 1427, 1432 (quoting *Connolly v. Pension Ben. Guar. Corp.*, 475 U.S. 211, 227 (1986)); *see also Lucas*, 505 U.S. at 1027–28 ("[I]n the case of personal property, by reason of the State's traditionally high degree of control over commercial dealings, [the owner] ought to be aware of the possibility that new regulation might even render his property economically worthless.").

Here, Plaintiffs fail to plausibly allege that Amendment 13 interferes with their reasonable investment-backed expectations in their dog racing-related

property. Plaintiffs allege the dog racing industry has been permitted in the state of Florida for nearly a century and they have "invested money in training, transporting, breeding, and racing greyhounds." *See* Am. Compl. ¶¶ 9, 21, 51. But, as Plaintiffs themselves affirm, dog racing in Florida is a highly regulated industry. *Id.* ¶¶ 9, 35; *see also* § 550.1625(1), Fla. Stat. ("The operation of a dog track and legalized pari-mutuel betting at dog tracks . . . is an operation that requires strict supervision and regulation in the best interests of the state."); *License Acquisitions, LLC v. Debary Real Estate Holdings, LLC*, 155 So. 3d 1137, 1148 (Fla. 2014) ("Pari-mutuel wagering is a heavily regulated industry in Florida."); *Dep't of Legal Affairs v. Sanford-Orlando Kennel Club, Inc.*, 434 So. 2d 879, 881 (Fla. 1983) ("[B]ecause of the nature of the enterprise, authorized gambling, this state may exercise greater control and use the police power in a more arbitrary manner."); *see also Gulfstream Park Racing Ass'n, Inc.*, 399 F.3d at 1278 (describing Florida's pari-mutuel industry as being subject to an "extensive and complex regulatory scheme"). Under these circumstances, Plaintiffs have not plausibly alleged that they had a *reasonable* expectation that their dog racing-related property would not be made economically worthless by a new law. *See Lucas*, 505 U.S. at 1027–28; *cf. Set Enters., Inc.*, 2010 WL 11549687, at *34–35 (plaintiff's "long history of interaction [with the city] regarding [plaintiff's] licenses" to operate an "adult entertainment establishment" precluded showing sufficient interference with plaintiff's investment-backed

expectations in its licenses); *Carney v. Att'y Gen.*, 890 N.E.2d 121, 132 (Mass. 2008) ("[G]ambling on dog races is a heavily regulated industry that only exists by virtue of legislatively created narrow exceptions to common-law and statutory bans and that, 'because of the nature of the business[, it] can be abolished at any time that the Legislature may deem proper for the safeguarding and protection of the public welfare.' ") (citation omitted).

Plaintiffs assert that Florida's First District Court of Appeal's decision in *State v. Basford* precludes dismissal of their takings claim. *See* Resp. at 13–14. In that case, a Florida pig farmer challenged an amendment to the Florida Constitution prohibiting the confinement of pregnant pigs in enclosures that "prevented [the pigs] from turning around freely." 119 So. 3d at 480. The plaintiff brought suit against the state, claiming that the amendment had deprived him of all economically viable and reasonable use of certain improvements he had placed on his real property designed for raising a high volume of pigs for market. *Id.* at 480–81. After a bench trial, the trial court concluded the amendment resulted in an as-applied or regulatory taking of the plaintiff's improvements because it caused a substantial reduction in their market value and interfered with the plaintiff's reasonable investment-backed expectations. *Id.* On appeal, the First District Court of Appeal affirmed, noting that it was "bound by the trial court's factual findings as to the value, or lack thereof, of [the plaintiff's] improvements as a result of the Amendment" and that its

38

"disposition [was] based solely upon the record in this case, the issues that were developed below, and the arguments that were raised by the State on appeal." *Id.*

This Court finds *Basford* distinguishable. The pig farming industry, while certainly regulated to some extent, is in no way comparable to the heavily regulated pari-mutuel gambling industry. Any reasonable investment-backed expectation held by Plaintiffs must have incorporated Florida's "extensive and complex regulatory scheme" and considered Florida's ability to use its police power "in a more arbitrary manner" in controlling the pari-mutuel industry. *See Sanford-Orlando Kennel Club, Inc.*, 434 So. 2d at 881; *Gulfstream Park Racing Ass'n, Inc.*, 399 F.3d at 1278. Unlike the plaintiff in *Basford*, Plaintiffs could have no reasonable investment-backed expectation that the state would not terminate their "privilege" to operate in a heavily regulated industry. *See* § 550.1625(1), Fla. Stat.; *Hawkeye Commodity Promotions, Inc. v. Miller*, 432 F. Supp. 2d 822, 856 (N.D. Iowa 2006) ("A 'reasonable investment-backed expectation' must be more than a 'unilateral expectation or an abstract need.' ") (quoting *Ruckelshaus v. Monsanto Co.*, 467 U.S. 986, 1005 (1984)), *aff'd sub nom. Hawkeye Commodity Promotions, Inc. v. Vilsack*, 486 F.3d 430 (8th Cir. 2007).

For these reasons, Plaintiffs have failed to plausibly allege that a cognizable "taking" has occurred. *See Nat'l Viatical, Inc.*, 2006 WL 1071839, at *4. Plaintiffs' takings claim must therefore be dismissed.

## B. Equal Protection Claim (Count II)

Plaintiffs claim Amendment 13 "denies equal protection because the State of Florida allows wagering on all other animal racing and only prohibits wagering on dog racing; one particular type of animal racing now considered politically unpopular." Am. Compl. ¶ 67. It is undisputed that Amendment 13 affects only wagering on dog racing and does not directly affect other forms of gaming, including horse racing. *See Dep't of State v. Fla. Greyhound Ass'n, Inc.*, 253 So. 3d 513, 524 (Fla. 2018) ("Horse racing, jai alai, and other permitted gaming activities will continue on January 1, 2021, just as they did on December 31, 2020."). Plaintiffs argue there is no legitimate purpose to discriminate against dog racing while permitting the operation of horse racing and other "similarly situated" industries. In other words, Plaintiffs complain that Amendment 13 violates the Equal Protection Clause because it is underinclusive.

The Fourteenth Amendment's Equal Protection Clause requires that the government treat similarly situated persons in a similar manner. *Leib v. Hillsborough Cty. Pub. Transp. Comm'n*, 558 F.3d 1301, 1305 (11th Cir. 2009). "To be similarly situated, the comparators must be *prima facie identical in all relevant respects*." *Grider v. City of Auburn*, 618 F.3d 1240, 1264 (11th Cir. 2010) (citation and quotation omitted). Assuming similarly situated persons exist, "[w]hen legislation classifies persons in such a way that they receive different treatment under the law,

the degree of scrutiny the court applies depends on the basis for the classification." *Gary v. City of Warner Robins*, 311 F.3d 1334, 1337 (11th Cir. 2002). "If a fundamental right or a suspect class is involved, the court reviews the classification under strict scrutiny." *Id.* On the other hand, if a law "does not infringe upon a fundamental right or target a protected class, equal protection claims relating to it are judged under the rational basis test; specifically, the [law] must be rationally related to the achievement of a legitimate government purpose." *Id.* (citation and quotation omitted).

Here, Plaintiffs' allegations fall far short of stating any viable Equal Protection claim.[14] The rational basis test applies to Plaintiffs' Equal Protection

---

[14] It is unclear that Plaintiffs have plausibly alleged that other pari-mutuel animal racing industries are "prima facie identical in all relevant respects" to pari-mutuel dog racing. Even on the most basic level, it would seem that dog racing is quite literally a different animal than horse racing. Moreover, Florida has historically treated dog racing and horse racing as "separate and distinct" classes:

> Petitioner claims that all holders of pari-mutuel permits . . . belong in one large class and as members of such a class they all must, by law, be treated equally in all respects. Historically and traditionally, however, these permittees have been treated differently by the legislature. . . . The conclusion that must be reached . . . is that different classifications exist among the various pari-mutuel permittees. . . . It is to these reasonable classifications between the different types of permittees established by the legislature that the constitutional concepts of due process and equal protection must be applied. . . . Petitioner cannot allege that the statute discriminates against dog tracks [in favor of horse racing tracks] since the dog racing permittees belong to a separate and distinct classification not affected by this legislation.

*Miami Beach Kennel Club, Inc. v. Bd. of Bus. Regulation of Dep't of Bus. Regulation*, 265 So. 2d 373, 375–76 (Fla. 3d DCA 1972). This Court assumes, without deciding, that stakeholders in other pari-mutuel animal racing industries are similarly situated comparators because, even if they were, Plaintiffs' Equal Protection claim fails under the rational basis test.

claim because Amendment 13 does not involve suspect classes such as race, gender, or national origin. *See F.C.C. v. Beach Commc'ns, Inc.*, 508 U.S. 307, 313 (1993) ("In areas of social and economic policy, a statutory classification that neither proceeds along suspect lines nor infringes fundamental constitutional rights must be upheld against equal protection challenge if there is any reasonably conceivable state of facts that could provide a rational basis for the classification."). Therefore, Amendment 13 will be upheld so long as it is rationally related to a legitimate government purpose. *See Foley v. Orange County*, 638 F. App'x 941, 944 (11th Cir. 2016).

"The rational-basis test asks (1) whether the government has the power or authority to regulate the particular area in question, and (2) whether there is a rational relationship between the government's objective and the means it has chosen to achieve it." *Avera v. Airline Pilots Ass'n Int'l*, 436 F. App'x 969, 975 (11th Cir. 2011). Under rational basis review, "governments 'are not required to convince the courts of the correctness of their legislative judgments;' " rather, the party challenging the legislative judgment bears the burden of proving that "the legislative facts on which the classification is apparently based could not reasonably be conceived to be true by the governmental decisionmaker." *Kentner v. City of Sanibel*, 750 F.3d 1274, 1281 (11th Cir. 2014) (quoting *Minnesota v. Clover Leaf Creamery Co.*, 449 U.S. 456, 464 (1981)).

42

As the Eleventh Circuit has recognized, the rational basis standard is "highly deferential," such that legislative acts reviewed under this standard are found to be unconstitutional "in only the most exceptional circumstances." *Id.* Importantly, a court must give "great deference to economic and social legislation." *Gary*, 311 F.3d at 1339. Under rational basis review, the challenged act will withstand scrutiny "even when there is an imperfect fit between means and ends." *See Leib*, 558 F.3d at 1306.

Under this highly deferential standard, this Court concludes that Amendment 13 satisfies the rational basis test. Whether, as Plaintiffs assert, the purpose of Amendment 13 is to protect greyhound dogs from being harmed or whether its purpose is to prohibit a certain form of pari-mutuel wagering in the state, Amendment 13 is rationally related to a legitimate state interest. *See Gulfstream Park Racing Ass'n, Inc.*, 399 F.3d at 1278; *Maryeli's Lovely Pets, Inc.*, 2015 WL 11197773, at *4; *see also Div. of Pari-Mutuel Wagering, Dep't of Bus. Regulation v. Fla. Horse Council, Inc.*, 464 So. 2d 128, 130 (Fla. 1985) ("[I]t is well established that the legislature has broad discretion in regulating and controlling pari-mutuel wagering and gambling under its police powers."); *C.E. Am., Inc. v. Antinori*, 210 So. 2d 443, 444 (Fla. 1968) ("[I]t is now generally recognized that legislation which has for its purpose the protection of animals from harassment and ill-treatment is a valid exercise of the police power."). Indeed, the Amended Complaint alleges facts

43

that suggest a rational basis for Amendment 13. *See, e.g.*, Am. Compl. ¶ 20 ("[Plaintiff Marsela Racing, Inc.] has three retired racers that live with him as pets; *two of which had injuries at the track*.") (emphasis added); *see also id.* ¶ 45 (quoting the Animal Law Section of the Florida Bar's Amicus Brief as stating "[greyhounds] are confined for long periods of time and suffer frequent injuries, neglect and death"). This Court "need not ignore these facts in favor of [Plaintiffs'] bald assertion that [the State] acted without any rational basis." *See Griffin Indus., Inc. v. Irvin*, 496 F.3d 1189, 1207 (11th Cir. 2007).

Plaintiffs' argument that Amendment 13 violates the Equal Protection Clause because it is underinclusive is unpersuasive. That Florida has chosen, in the field of pari-mutuel wagering on animal races, to prohibit wagering on dog racing but not horse racing simply embodies the permissible exercise of its discretion to "select one phase of one field and apply a remedy there, neglecting the others." *See Williamson v. Lee Optical of Okla. Inc.*, 348 U.S. 483, 489 (1955). "A statute is not invalid under the Constitution because it might have gone farther than it did, or because it may not succeed in bringing about the result that it tends to produce." *Roschen v. Ward*, 279 U.S. 337, 339 (1929). Florida "was not bound to deal alike with all these classes, or to strike at all evils at the same time or in the same way." *Semler v. Or. State Bd. of Dental Exam'rs*, 294 U.S. 608, 610 (1935). On the contrary, "the Equal Protection Clause does not require that a State must choose between attacking every aspect of

a problem or not attacking the problem at all." *Dandridge v. Williams*, 397 U.S. 471, 486–87 (1970). With respect to pari-mutuel wagering on animal races, Florida could reasonably conclude that "[e]vils in the same field may be of different dimensions and proportions, requiring different remedies." *See Williamson*, 348 U.S. at 489. The Constitution does not authorize this Court to interfere in that policy decision. *See Haw. Hou. Auth. v. Midkiff*, 467 U.S. 229, 242 (1984) ("When the legislature's purpose is legitimate and its means are not irrational, our cases make clear that empirical debates over the wisdom of takings—no less than debates over the wisdom of other kinds of socioeconomic legislation—are not to be carried out in the federal courts.").

For these reasons, Plaintiffs have failed to plausibly allege a violation of the Equal Protection Clause. *See Leib*, 558 F.3d at 1306 (affirming dismissal of equal protection claim where the challenged regulation "easily survive[d] rational basis review"). Plaintiffs' Equal Protection claim is therefore dismissed.

### C. Impairment of Contracts Claim (Count III)

Plaintiffs allege that Amendment 13 "impaired the contracts of all people engaged in the business of dog racing in the State of Florida." Am. Compl. ¶ 70. The Contracts Clause provides that "[n]o State shall . . . pass any . . . Law impairing the

Obligation of Contracts . . . ." U.S. Const. art. I, § 10.[15] Although sweeping in its language, that "Clause is not . . . the Draconian provision that its words might seem to imply." *Allied Structural Steel Co. v. Spannaus*, 438 U.S. 234, 240 (1978). For one, the Contracts Clause "does not prevent the State from exercising such powers as are vested in it for the promotion of the common weal, or are necessary for the general good of the public, though contracts previously entered into between individuals may thereby be affected." *Id.* at 241 (citation and quotation omitted). In other words, "[o]ne whose rights, such as they are, are subject to state restriction, cannot remove them from the power of the State by making a contract about them. The contract will carry with it the infirmity of the subject-matter." *Id.* (citation and quotation omitted).

Nevertheless, a state's "sovereign power . . . to safeguard the welfare of [its] citizens . . . has limits when its exercise effects substantial modifications of private contracts." *Id.* at 244 (citation and quotation omitted). But a "state regulation that restricts a party to gains it reasonably expected from a contract does not necessarily constitute a substantial impairment." *See Energy Reserves Grp., Inc. v. Kan. Power*

---

[15] As noted by *LL Liquor, Inc. v. Montana*, 912 F.3d 533, 537 n.2 (9th Cir. 2018), federal courts—including the United States Supreme Court—have "bounced between using the plural 'Contracts' and the singular 'Contract' when referring to this Clause." The Ninth Circuit concluded the plural form was appropriate because article 10, section 1 of the Constitution says "Obligation of *Contracts*." (Emphasis added). Letters (and words) matter, especially in the Constitution. *See M'Culloch v. Maryland*, 17 U.S. 316, 407 (1819) ("[W]e must never forget that it is a *constitution* we are expounding."). This Court will likewise use the plural form.

*& Light Co.*, 459 U.S. 400, 411 (1983). "In determining the extent of the impairment, [courts] are to consider whether the industry the complaining party has entered has been regulated in the past." *Id.* If a state law substantially impairs a contractual relationship, the state "must have a significant and legitimate public purpose behind the regulation, such as the remedying of a broad and general social or economic problem." *Id.* at 411–12 (citation omitted). "Once a legitimate public purpose has been identified, the next inquiry is whether the adjustment of the rights and responsibilities of contracting parties is based upon reasonable conditions and is of a character appropriate to the public purpose justifying [the law's] adoption." *Id.* at 412 (quotation omitted). Importantly, "[u]nless the State itself is a contracting party, as is customary in reviewing economic and social regulation, . . . courts properly defer to legislative judgment as to the necessity and reasonableness of a particular measure." *Id.* at 412–13 (citation and quotation omitted).

Here, Plaintiffs fail to even allege the existence of a specific contract impaired by Amendment 13. *Life Partners, Inc.*, 2008 WL 11337548, at *4 (dismissing Contracts Clause claim because plaintiff "[did] not allege when the contracts were executed or explain how the Act impairs those contracts"); *APT Tampa/Orlando, Inc. v. Orange County*, No. 97-891-CIV, 1997 WL 33320573, at *7 (M.D. Fla. Dec. 10, 1997) (dismissing plaintiffs' Contracts Clause claim because "Plaintiffs have not alleged that a contract exists"). But even assuming the sufficiency of Plaintiffs'

allegation that "all people engaged in the business of dog racing in the State of Florida" have contracts that are affected by Amendment 13, Plaintiffs have not plausibly alleged that these contractual relationships have been substantially impaired. Only Plaintiffs' *reasonable* expectations and reliance can undergird a claim for unconstitutional contract interference. *See Energy Reserves*, 459 U.S. at 416. Plaintiffs, operating in the context of an "extensive and complex regulatory scheme" governing pari-mutuel wagering, *see Gulfstream Park Racing Ass'n, Inc.*, 399 F.3d at 1278, should have anticipated that changes in that regulatory scheme might occur to the detriment of their contractual expectations.

Furthermore, even to the extent Amendment 13 substantially impairs Plaintiffs' contractual interests, Amendment 13 "rests on, and is prompted by, significant and legitimate state interests." *See Energy Reserves*, 459 U.S. at 416; *Gulfstream Park Racing Ass'n, Inc.*, 399 F.3d at 1278; *Maryeli's Lovely Pets, Inc.*, 2015 WL 11197773, at *4. Plaintiffs do not allege the State itself is a party to any affected contract, and this Court therefore "properly defer[s] to [Florida's] judgment as to the necessity and reasonableness of [Amendment 13]." *See Energy Reserves*, 459 U.S. at 412–13.

Plaintiffs have failed to plausibly allege that Amendment 13 violates the Contracts Clause. *See Etherton v. City of Rainsville*, No. CV-14-BE-1832-M, 2015 WL 6123213, at *12–13 (N.D. Ala. Oct. 19, 2015) (dismissing Contracts Clause

claim where plaintiffs failed to plausibly allege the challenged law did not serve "a significant and legitimate public purpose"), *aff'd per curiam*, 662 F. App'x 656 (11th Cir. 2016); *Nat'l Viatical, Inc.*, 2006 WL 1071839, at *2–3 (dismissing Contracts Clause claim where the state "demonstrated a significant and legitimate public purpose" for the challenged law). Plaintiffs' Contracts Clause claim is therefore due to be dismissed.

### D. Substantive Due Process Claim (Count IV)

Plaintiffs claim that Amendment 13 denies their property rights without due process of law in violation of the Fourteenth Amendment to the U.S. Constitution and the Constitution of the State of Florida. Am. Compl. ¶ 73. "In the Eleventh Circuit, an arbitrary or capricious legislative act may provide the basis for a substantive due process claim, which is called 'an arbitrary and capricious due process claim.'" *Romero v. Watson*, No. 1:08 CV 217, 2009 WL 1361714, at *6 (N.D. Fla. May 13, 2009) (quoting *Villas of Lake Jackson, Ltd. v. Leon County*, 121 F.3d 610, 611, 615 (11th Cir. 1997) and citing *Eide v. Sarasota County*, 908 F.2d 716, 721–22 (11th Cir. 1990)). As distinct from a Takings Clause claim, which "addresses government action that is invalid absent compensation," an arbitrary and capricious due process claim "addresses government action that is invalid the moment it occurs despite any subsequent remedy or compensation." *Id.* Thus, "[w]here a person's state-created [property] rights are infringed by a 'legislative act,'

the substantive component of the Due Process Clause generally protects that person from arbitrary and irrational government action." *Kentner*, 750 F.3d at 1279–80.

As a preliminary matter, this Court finds that Amendment 13 is a "legislative act." There is no definitive test for determining whether challenged actions are legislative or executive (i.e., nonlegislative). *See Kentner*, 750 F.3d at 1280. Nevertheless, the Eleventh Circuit has set forth a number of guideposts to assist courts in this determination. *See id.* Legislative acts most commonly occur in the form of "laws and broad-ranging executive regulations" that "generally apply to a larger segment of—if not all of—society." *Id.* (quotation omitted). "A legislative act also involves policy-making rather than mere administrative application of existing policies." *Id.* Based on this guidance, Amendment 13 is a legislative act because it applies generally to all citizens of Florida and involves policy-making rather than mere administrative application of existing policies. *See id*; *75 Acres, LLC v. Miami-Dade County*, 338 F.3d 1288, 1296–97 (11th Cir. 2003). Accordingly, Plaintiffs' claim falls within an exception to the general rule prohibiting due process claims premised on state-created interests.[16]

---

[16] While the Amended Complaint does not explicitly assert a claim for a violation of Plaintiffs' procedural due process rights, Plaintiffs' allegations may be read to imply that the enactment of Amendment 13 constituted a procedural due process violation. *See* Am. Compl. ¶¶ 10–14, 53–57 (alleging, for example, that "Amendment 13 escaped the checks and balances that are traditionally afforded to proposed legislation" via the Constitutional Revision Commission). As Defendants correctly argue, the process by which Amendment 13 was proposed and adopted comported with Florida law. *See* ECF No. 33 at 39–40. The Eleventh Circuit has repeatedly made clear that the legislative process itself provides all the process constitutionally due to a property

"Substantive due process challenges that do not implicate fundamental rights are reviewed under the 'rational basis' standard."[17] *Kentner*, 750 F.3d at 1280. Plaintiffs have failed to identify a fundamental right upon which Amendment 13 allegedly infringes. While Plaintiffs identify certain rights they label as "fundamental" and allege have been infringed by Amendment 13 (i.e., the "fundamental right to use [their] property," and the "[f]undamental right to earn a livelihood," *see* Am. Compl. ¶¶ 58–59), neither of these rights are "fundamental." The fundamental rights

---

owner. *See, e.g.*, *Avera*, 436 F. App'x at 976–77 ("Congress acted rationally and within its power by enacting the [statute] and therefore [plaintiff's] rights were protected only by his power, 'immediate or remote, over those who make the rule.' ") (citation omitted); *Busse v. Lee County*, 317 F. App'x 968, 972 (11th Cir. 2009) ("[A]lleged problems with the adoption of [legislative] acts cannot serve as the basis for a procedural due process claim . . . ."); *75 Acres, LLC*, 338 F.3d at 1298 ("[T]he legislative process surrounding the enactment of [the challenged law] provided [plaintiff] with all the process constitutionally due."). Therefore, "to the extent Plaintiffs' [Amended Complaint] suggests a procedural due process violation, the legislative process affords sufficient due process protection for property owners' interests." *See Beaulieu v. Ala. Onsite Wastewater Bd.*, 373 F. App'x 3, 5 (11th Cir. 2010).

Moreover, that Amendment 13 was enacted by "bypass[ing] public officials who were deemed not responsive to the concerns of a majority of the voters" is of no consequence because the voters of Florida were well within their right to "act[] in concert and statewide" to adopt their preferred policy. *See Schuette v. Coal. to Defend Affirmative Action, Integration & Immigrant Rights & Fight For Equality By Any Means Necessary (BAMN)*, 572 U.S. 291, 311–13 (2014) ("Were the Court to rule that the question addressed by Michigan voters is too sensitive or complex to be within the grasp of the electorate . . . that holding would be an unprecedented restriction on the exercise of a fundamental right held not just by one person but by all in common."). The Florida Supreme Court has also rejected the argument that restrictions adopted as a result of a constitutional ballot initiative should be subjected to higher scrutiny than restrictions adopted as part of the deliberative process of enacting laws in the Florida Legislature. *See Lane v. Chiles*, 698 So. 2d 260, 262–64 (Fla. 1997); *see also Carney*, 890 N.E.2d at 131, 131 n.12 ("[T]he [ballot] initiative process and the Statewide election will satisfy the requirements of procedural due process with respect to the plaintiffs' property interests in their [pari-mutuel dog racing] licenses[.]"). Accordingly, any procedural due process claim asserted by Plaintiffs fails.

[17] Florida courts utilize an identical rational basis test to analyze substantive due process claims under the Florida Constitution. *See Silvio Membreno & Fla. Ass'n of Vendors, Inc. v. City of Hialeah*, 188 So. 3d 13, 20, 20 n.5 (Fla. 3d DCA 2016).

protected by the U.S. Constitution do not include state-created property interests such as Plaintiffs' interests in their pari-mutuel licenses. *See Ford*, 580 F. App'x at 711 (affirming dismissal of plaintiffs' due process claim because plaintiffs' allegation that their "rights in their [bingo] licenses" had been "improperly invalidated" did not plausibly claim a violation of their fundamental rights because "their purported rights in the bingo licenses were created and defined by state law"); *Avera*, 436 F. App'x at 976; *Prescott v. Florida*, 343 F. App'x 395, 400 (11th Cir. 2009)*; see also Hillcrest Prop., LLP v. Pasco County*, 915 F.3d 1292, 1300 n.12 (11th Cir. 2019). Nor is there a fundamental right to maintain a business or earn a profit. *See Balt. Air Transp., Inc. v. Jackson*, 419 F. App'x 932, 937 (11th Cir. 2011) (citing *Coll. Sav. Bank v. Fla. Prepaid Postsecondary Educ. Expense Bd.*, 527 U.S. 666, 675 (1999)); *cf. Helm v. Liem*, 523 F. App'x 643, 645 (11th Cir. 2013) ("[T]he right to work in a specific profession is not a fundamental right."); *Vickers v. Egbert*, 359 F. Supp. 2d 1358, 1361–62 (S.D. Fla. 2005) ("Fishing, whether commercial or recreational, is not a fundamental right and those engaged in these activities are not a suspect class."). And, to the extent Plaintiffs assert a fundamental right to use their property for pari-mutuel dog racing based on article 1, section 2 of the Florida Constitution's Declaration of Rights, "even constitutionally protected property rights are not absolute, and are subject to the fair exercise of the power inherent in the State to promote the general welfare of the people through regulations that are

necessary to secure the health, safety, good order, [and] general welfare." *Rickets v. Vill. of Miami Shores*, 232 So. 3d 1095, 1098–1100 (Fla. 3d DCA 2017) (quotation omitted) (finding rational basis test applied to ordinance forbidding front-yard vegetable gardens); *see Fraternal Order of Police, Metro. Dade Cty., Lodge No. 6 v. Dep't of State*, 392 So. 2d 1296, 1301–1302 (Fla. 1980) ("The right to earn a livelihood by engaging in a lawful occupation or business is subject to the police power of the state to enact laws which advance the public health, safety, morals or general welfare.").

As previously explained in the context of Plaintiffs' Equal Protection claim, a rational basis exists to believe that Amendment 13 would further Florida's legitimate interests in regulating pari-mutuel wagering or protecting the health and welfare of domestic animals. *See Cook v. Bennett*, 792 F.3d 1294, 1301 (11th Cir. 2015) ("Rational basis review in the context of equal protection is essentially equivalent to rational basis review in the context of due process."). Accordingly, Plaintiffs' Substantive Due Process claim is dismissed. *See Leib*, 558 F.3d at 1307–08 (affirming dismissal of substantive due process claim where the challenged regulation survived rational basis review).

## V.   Conclusion

For these reasons, Defendants' motion to dismiss is granted. This Court is concerned about the potential futility of an amended pleading. *See Patel v. Ga. Dep't*

*BHDD*, 485 F. App'x 982, 982 (11th Cir. 2012) ("Futility justifies the denial of leave to amend where the complaint, as amended, would still be subject to dismissal."). Although it seems doubtful that Plaintiffs will be able to allege additional facts that would remedy the defects this Court has identified in the Amended Complaint, this Court will afford Plaintiffs one more chance to amend. Therefore, **on or before May 11, 2020**, Plaintiffs shall either (1) file a second amended complaint or (2) file a notice stating their intention not to file a second amended complaint. If Plaintiffs elect not to file a second amended complaint, this Court will enter judgment triggering the right to appeal.

Accordingly,

**IT IS ORDERED**:

1. Defendants' motion to dismiss, ECF No. 33, is **GRANTED**.

2. Plaintiffs' claims against the Governor and the Secretary are **DISMISSED without prejudice** for lack of subject-matter jurisdiction.

3. Plaintiffs' claims against the Attorney General are **DISMISSED without prejudice** for failure to state a claim.

4. **On or before May 11, 2020**, Plaintiffs shall either (1) file a second amended complaint or (2) file a notice stating their intention not to file a second amended complaint, in which case this Court will enter a final judgment consistent with this Order.

**SO ORDERED on April 27, 2020.**

<u>s/Mark E. Walker</u>
**Chief United States District Judge**