# UNITED STATES DISTRICT COURT
# NORTHERN DISTRICT OF FLORIDA

---

Support Working Animals, Inc., et al.,

      Plaintiff,

  **-vs.-**

Ashley Moody, in her official capacity as
Florida Attorney General,

      Defendant.

**Case No. 4:19-cv570-MW/MAF**


**COMPLAINT FOR VIOLATION OF
CIVIL RIGHTS UNDER 42 U.S.C. §
1983 AND DECLARATORY AND
INJUNCTIVE RELIEF**

---

## SECOND AMENDED COMPLAINT

**COMES NOW,** Plaintiffs, by and through their undersigned attorney pursuant to Fed. R. Civ. P. 15(2) and this Court's Scheduling Order [ECF 46], file this Second Amended Pleading. Plaintiffs stand on the precipice of losing everything they have every worked for and plead and pray for relief by alleging the following in support thereof:

## PRELIMINARY STATEMENT

[¶1]    In the November 2018 General Election, the electors of the State of Florida approved Amendment 13, now codified as Article 10, §32 of the Florida Constitution, (hereinafter referred to as "**Amendment 13**") that states:

> The humane treatment of animals is a fundamental value of the people of the State of Florida. After December 31, 2020, a person authorized to conduct gaming or pari-mutuel operations may not race greyhounds or any member of the *Canis Familiaris* subspecies in connection with any wager for money or any other thing of value in this state, and persons in this state may not wager money or any other thing of value on the outcome of a live dog race occurring in this state. The failure to conduct greyhound racing or wagering on greyhound racing after December 31, 2018, does not constitute grounds to revoke or deny renewal of other related gaming licenses held by a person who is a licensed greyhound permitholder on January 1, 2018, and does not affect the eligibility of such permitholder, or such permitholder's facility, to conduct other pari-mutuel activities authorized by general law. By general law, the legislature shall specify civil or criminal penalties

for violations of this section and for activities that aid or abet violations of this section.

[¶2]    Amendment 13 has set a dangerous precedent in the state of Florida because the new language in Florida's constitution implies that the state of Florida now provides animals certain rights, without establishing exactly what those "rights" are.

[¶3]    While most voters in the state of Florida might like to believe that animals are regarded as something greater than personal property, Florida's statutes and case law clearly and unambiguously state the contrary. In reality, the state of Florida regards animals only as chattel, i.e., personal property.

[¶4]    However, Amendment 13 now elevates the rights of animals to something beyond that of chattel, but not all animals, only *canis familiaris*, dogs; as it proports to prohibit wagering on the racing of any subspecies of *canis familiaris*, it does not prevent the wagering on the racing of other animals. In other words, Amendment 13 creates a mysterious new set of rights that directly conflict with the existing laws in the state of Florida.

[¶5]    Even though it is most likely the purpose of Amendment 13 was to prohibit wagering on live greyhound racing, but the language fails to do so because placing bets while in the state of Florida on live dog races occurring outside the state of Florida will still be legal. Additionally, live dog racing occurring in this state can be simulcast to other facilities outside the state of Florida where wagering on the race may take place.

[¶6]    This Amendment simply prohibits the state of Florida from receiving any tax revenue from the sport.  In light of the unimaginable financial crisis this world, country and the state of Florida now face because of the COVID-19 global pandemic, Florida is in dire need of tax revenue.

[¶7]   The unprecedented closure of Florida's theme parks has brought the tourism industry to its knees.  Industrywide, the loss of revenue on a daily basis for the tourism industry amounts to more than $205.4 million each day.1

[¶8]   The greyhound industry has contributed to Florida's economy and raised revenue of more than $200 billion dollars in the fiscal year 2017/2018. 2 The greyhound industry stands ready, willing and able to put Florida's economy on the "fast track" again if this Court grants the relief requested in this Complaint.

[¶9]   Since Amendment 13 was not written by Florida's elected legislators, the plain language used in Amendment 13 fails to achieve its stated purpose and should be stricken.

[¶10]   Additionally, since Amendment 13 was brought to the ballot by lobbyists, hired to represent out-of-state special interest groups, the claims of industry-wide greyhound abuse were never substantiated as with a Senate hearing with subpoena powers.

[¶11]   The deliberate targeting of the greyhound industry as an unpopular minority class while leaving the horse racing industry unscathed is repugnant to the Equal Protection Clause of the United States Constitution which abhors political animus directed at a class for disparate treatment.

## THE PARTIES

### PLAINTIFFS

[¶12]   Plaintiff, Support Working Animals, Inc. (SWA), is a registered 26 U.S.C. § 501(c)(4) corporation operating in the State of Florida and organized for the purpose of educating the public and legally defending members of the public as needed regarding the historical and

---

1 https://www.bizjournals.com/orlando/news/2020/04/01/millions-lost-the-daily-pandemic-cost-for-disney.html
2http://www.myfloridalicense.com/DBPR/pmw/documents/AnnualReports/AnnualReport-2017-2018--87th--20190327.pdf

current roles which working livestock, and sporting animals play in people's lives, and the purposes which such animals serve. SWA is an all-volunteer organization whose volunteers are passionate about participating in activities thorough out the United States which promote the humane ownership and breeding of animals. SWA is entirely funded by donations and has no paid officers. SWA is dedicated to ensuring those persons who own pets, sporting animals, working animals, or service animals are able to continue to have their rights of ownership protected.

[¶13]   SWA volunteers attend events to educate the public on the importance of service animals to disabled persons and veterans; SWA volunteers track and educate the public via social media and the internet in regards to legislation in states which may affect citizens' rights to own animals for agriculture, hunting, sporting activities, service to disabled persons/military, K9 police dogs, or companionship; SWA volunteers attend events such as dog shows, state fairs, rodeos, and other events to educate the public on the importance of preserving human-animal relationships while ensuring animals are treated respectfully and humanely; SWA volunteers educate the public on how they can in turn work in their respective states to preserve the rights of animal ownership; SWA volunteers assist to legally defend the rights of animal ownership. Some SWA members also own and race dogs in the State of Florida and are materially affected by Article 10 §32 of the Florida Constitution.

[¶14]   Plaintiff, Deborah Elliot owns Jan George Kennels, LLC in Ocala, Florida. This family business has been woven into the fabric of Florida's history. This business began when Deborah Elliot's grandfather, Ben Jacques, a pioneer in the Greyhound Racing Hall of Fame, began his prolific career at the historic Derby Lane and passed down the business to his daughter, Jan George, Deborah Elliot's mother. Deborah and her son Walter George are third and fourth generation greyhound breeders, who took over the business after Jan George passed away. This

proud family has raised and raced greyhound athletes for four generations; they have worked, sweated, dreamed and prayed for their beloved athletes who were born to run. As Deborah states, "even the 14 and 10-year old retired racers that live with [them] as pets get so excited to see the greyhound transportation truck on the farm; every hair on their bodies stand up, they get a thrill because they are born and bred athletes who love to run." Deborah goes on to state that "a greyhound named Caroline who was unable to race lived on the farm and would train the puppies. Caroline would get so excited to win the races (even though it was just against puppies). Although Caroline was unable to race at the track, she was still a winner." Deborah, through tears, shock and a broken heart feels paralyzed with fear because of the looming prohibition on the only sport she has ever known. Like many others in the industry, Deborah and her son George are not in this business for the money, in fact, they just break even, but greyhound racing is not just a business; it is their life, their love and their passion. The passage and enactment of this Amendment will force Deborah and her son to abandon their way of life, to lose their legacy and heritage; it will have the effect of wiping out Deborah Elliot's beloved grandfather and mother's legacy forever.

[¶15]   Plaintiff, Belinda Parker owns Capabal Kennel, Inc. in St. Petersburg, Florida. Because Belinda's mother was employed in the greyhound racing industry, Belinda grew at an early age around greyhounds and the people in the industry became her family. She even met her husband through the industry and raised her children around the greyhounds. She has travelled around the United States perfecting her craft of raising racing greyhounds before settling down in the state of Florida to merge her kennel with another owner. Belinda says that people in the greyhound industry are not millionaires, they are regular folk, many of whom have second jobs to finance their businesses, but they do it not for money but for the love of the sport and the dogs. Belinda states that "[they] used to be able to give the public tours of the kennels to show people

how the dogs actually lived. When people toured, they couldn't believe how happy and friendly the dogs were, how they would 'maul' you with love and with the best of intentions 'smash you with affection.'" She goes on to state that the kennels were prohibited from offering tours to unlicensed individuals, so the Florida voters were not allowed to see the dogs actually lived on the farms and kennels. She further states that Florida's elected officials including but not limited to Pam Bondi, were invited to the kennels to tour the facilities for themselves, but rejected the invitations. She states, "the state of Florida took away [their] voice by imposing or threatening to impose fines against [them] for offering tours to people." The dogs at the kennel are young; between two and four years old and Belinda states, "that is their career, they then become adopted at an astonishing almost 100% adoption rate." Belinda's favorite thing about the greyhound is that they all think they win, no matter the outcome. Belinda is 58 years old and has been in the industry since she was 18 years old. She says that it's heart-breaking, the closer the time gets to the end of the greyhound racing era.

[¶16]   Plaintiff, Phil Marsella owns Marsella Racing, Inc. in Palm City, Florida. Mr. Marsella owns a greyhound transport business which transports the greyhounds from track to farm to adoption. Mr. Marsella has been in the business for 15 years old and he is 54 years old. He says that he has heard officials in the state of Florida who are involved with the CRC tell him that he should just move out of the state of Florida. Mr. Marsella is mortified with this recommendation from a state where he has paid his taxes and spent over $700,000 a year in maintaining his business. He asserts that the state of Florida is punishing regular law abiding, tax paying citizens. Mr. Marsella used to employ eight people who had families to support. Now, because of the looming prohibition on greyhound racing, he is down to four employees. Mr. Marsella says that he loves what he does because the greyhounds are such amazing animals and they are born and bred to race.

He says, "you can just see them when they are puppies, they're not forced to run, they haven't been trained yet, but all they do is run, it's just what they do." Mr. Marsella further states that all his dogs get adopted, "not just to any home but only to caring and loving homes and if for any reason, any of the adopters have to give up the dog, [he] want[s] it back." Mr. Marsella has three retired racers that live with him as pets; two of which had injuries at the track. Contrary to the claims of the proponent of Amendment 13, greyhounds are not put down if they are injured. Greyhounds are no different than any other breed in that regard. In Florida it is estimated that in 2018 there were close to 1,300 claims for dog bites or other dog-related injuries causing fractures and other serious injuries.  Mr. Marsella cites to a newspaper article from the South Florida Sun Sentinel that states "six of every 100,000 Floridians filed dog-injury claims, . . . and account for nearly a third of the money paid out in 2018 for homeowner liability claims - $675 million."   Mr. Marsella continues, "No way would I allow these greyhounds to be put down, they came to live with me, I've even paid for other dogs' vet bills so they wouldn't be put down after an injury" said Mr. Marsella. He went on to say, "I'm going to have to pick up stakes and try to sell my house and move out of Florida, I just don't know what to do if greyhound racing is prohibited, it just breaks my heart."

[¶17]   Plaintiffs Kacer Kennel, LLC, Michael Gerard, Sharon Dippel, Gloria Thomas, Seminole Animal Supply, Inc., and Don Jarrett Greyhound Transportation Melody Alves Kennel, Greg Morse, Donna Hahn Malbouef, Jamie Testa, Anthony Calvo and Kurt Trzeciak are all similarly situated in that they all have businesses directly involved with the greyhound racing industry throughout the State of Florida; many of whom are third and fourth generation family businesses and have supported the state of Florida with their tax dollars. Each of the Plaintiffs has dedicated themselves to training, transporting, breeding and racing greyhounds. These individuals

and entities in the State of Florida and their employees will lose not only their businesses and income, but their heritage and identity through the state's unconstitutional taking under Amendment 13.

## DEFENDANT

[¶18]   The Attorney General of the state of Florida, Ashley Moody, is a member of the Constitutional Revision Commission, the ad hoc entity exists temporarily once every twenty years and is responsible for placing Amendment 13 on the 2018 ballot. Ms. Moody serves as the chief legal officer of the state and is head of the Florida Department of Legal Affairs. One of the chief duties of the attorney general is to "defend the state in civil litigation cases" and "to defend the constitutionality of Florida statutes." As such, the office of the attorney general shall be the chief legal officer to represent the state in a constitutional challenge of this legislation.

## JURISDICTION AND VENUE

[¶19]   This Court has jurisdiction because this action arises out of the Fifth and Fourteenth Amendments of the United States Constitution.  See 28 U.S.C. §1331.

[¶20]   This Court has jurisdiction to grant relief under the Declaratory Judgment Act.  See 28 U.S.C. §§ 2001 and 2202.

[¶21]   This action for declaratory relief is brought pursuant to Fla.  Stat.  § 86.021 to determine the constitutionality of Amendment 13.

[¶22]   This Complaint seeks redress to prevent imminent violations of the Plaintiffs' fundamental rights guaranteed under the Constitution of the United States and 42 U.S.C. § 1983 specifically seeking redress for the imminent deprivation of property from any person acting under color of state law.

[¶23]   Plaintiffs have suffered injury-in-fact that is concrete and actual or imminent because Amendment 13 seeks to render Plaintiffs' business practices unlawful thereby depriving the Plaintiffs of their property rights in a fashion that violates the fundamental rights afforded under the United States and Florida's Constitution.

[¶24]   Venue is proper in the Northern District of Florida, Tallahassee Division under 28 U.S.C. § 1391(b)(1) ("a judicial district in which any defendant resides.")

## NATURE OF ACTION AND FACTS

[¶25]   Greyhound racing has always been and *still is* legal in the State of Florida.  The State of Florida legalized gambling in 1931. 3

[¶26]   Since the legalization of gambling in the State of Florida, Florida's state legislature has passed laws regulating wagering on the outcome of a dog race.  See e.g. Florida Statutes, Chapter 550 (Florida Pari-Mutuel Wagering Act).

[¶27]   No evidence was presented that the regulation of the greyhound racing industry was not working.  There was no balancing test put forth between regulation versus prohibition.

[¶28]   The legalization of gambling and the regulation of dog racing created an industry in Florida centered around greyhound racing.

[¶29]   People in this industry earn a living and make substantial investments of both time and money in the State of Florida and the State of Florida has benefitted from the dog racing industry both economically through taxation and socially by providing an entertainment venue.

---

3 "A Review of the Method of Granting Additional Pari-Mutuel Operation Days," Florida Senate Committee on Commerce, March 1987 and Chapter 14832, L.O.F. (1931).

[¶30]   The state of Florida has raised $9,889,937.00 collected just from **abandoned winning tickets** for the State School Trust Fund from Greyhound Permitholders over the last decade. 4

## AMENDMENT 13 WAS PLACED ON THE BALLOT BY THE CONSTITUTIONAL REVISION COMMISSION WHICH IS *NOT* A TRADITIONAL BRANCH OF FLORIDA GOVERNMENT

[¶31]   The Constitutional Revision Commission [the "CRC"] itself is an unusual creature of constitutional construction and is *not* within the traditional three branches of government. 5

> The proposal to amend Florida's Constitution to make the wagering on the outcome of a dog race illegal in the State of Florida did not originate in the Florida legislature. In 1968, the Florida Legislature created the Constitution Revision Commission (CRC) that would meet every 20 years to make changes and additions to the state Constitution.  Made up of 37 Florida citizens, this Commission is the only one of its kind in the nation.  Through a series of public meetings, issue research by appointed subcommittees and thorough discussions, the Commission drafts proposed changes to the Constitution for inclusion on Florida's general election ballot. 6

[¶32]   Proponents of Amendment 13 sought to use the CRC to amend Florida's Constitution because Florida's legislature refused to do so.  Hank Coxe, one of the thirty-seven commissioners on the CRC, admitted that the proposed Constitutional amendment was put forward because the CRC wanted an "emotional issue" on the ballot.  7

[¶33]   The CRC process was intended to provide for citizens' input, but instead was hijacked by political interests according to CRC Commissioner Hank Coxe.8

[¶34]   Amendment 13 was never vetted by the legislature to determine its constitutionality, was placed on the 2018 ballot and passed to become Article 10, §32 of the Florida

---

4 myfloridalicense.com/DBPR/pari-mutuel-wagering/forms-and-publications/
5 https://www.flchamber.com/what-is-the-constitutional-revision-commission/
6 http://www.aif.com/crc/.
7https://www.jaxdailyrecord.com/article/hank-coxe-politics-controlled-florida-constitution-revision-commission?amp&__tw.
8 Id.

Constitution.  In the exercise of its police power to implement Article 10, §32 of the Florida Constitution the State of Florida bypassed the checks and balances of its three branches of government and executed a taking thus depriving those working in the industry of dog racing in the State of Florida their livelihood.

### LOBBYISTS REPRESENTING OUT-OF-STATE SPECIAL INTEREST GROUPS WERE THE MAJOR PROPONENTS OF AMENDMENT 13

[¶35]   A separate *lobbyist* registration is required [for participation in the CRC]. 9

[¶36]   Lobbying describes paid activity in which *special interests hire well-connected professional advocates* . . . to argue for specific legislation in decision-making bodies. 10

[¶37]   Corporate entities based *outside* the state of Florida, including, but not limited to, Grey2K USA Worldwide, Grey2K USA, and the Humane Society of the United States, registered several lobbyists to advocate for changing the laws of the state of Florida. 11

[¶38]   These *out-of-state* lobbyists raised at least $2.5 million while the greyhound racing supporters had raised only $24,000 to defend racing.  "It's a David and Goliath fight," said Norm Rader, a greyhound trainer.  He continued, "They're going to overpower us with TV commercials . . . we can't dispute the lies they're telling about us." 12

[¶39]   The stars aligned against the greyhound industry with conservatives and liberals alike using their united political war-chests to deprive the greyhound industry of their livelihoods and to help support the Humane Society of the United States, who helped spearhead the greyhound racing prohibition. 13

---

9 https://www.flchamber.com/what-is-the-constitutional-revision-commission/
10https://www.nfib.com/content/news/florida/nfib-urges-senate-to-vote-to-abolish-the-constitution-revision-commission/
11 Constitution Revision Commission – 2018 Registrations by Lobbyist Name
12  Washington Post, "A greyhound racing ban in Florida means thousands of dogs will need new homes" by Cindy Boren November 2018, at 10:41 a.m. EST
13   https://www.palmbeachpost.com/news/20190209/gop-stars-lara-trump-pam-bondi-matt-gaetz-back-greyhound-adoptions

## PROPONENTS OF AMENDMENT 13 SOUGHT OUT TO
## MAKE THE GREYHOUND INDUSTRY A POLITICALLY UNPOPULAR CLASS

[¶40]   Grey2K and HSUS, through their lobbyists, armed with financial support, overpowered the greyhound racing industry and inundated the citizens of the state of Florida with one-sided, sometimes unverified statistics and misinformation; all for the purpose of carrying out their nationwide mission of shaping public opinion about individuals involved in the dog racing community.

[¶41]   These out of state proponents of Amendment 13 deliberately created a swell of bias claiming that the greyhound racing industry treats dogs in a cruel inhumane manner, thus, creating a politically unpopular class.

[¶42]   Commissioner Coxe, one of the thirty-seven members of the CRC questioned the lack of evidence of the claim that greyhounds were inhumanely treated, "With respect to what you characterize as the inhumanity, would the 66 Sheriffs and the Department of Public Safety and 20 State Attorneys and crimes on our statutes that makes it a felony to abuse animals, why is that not done with the horrors we have heard?" 14

[¶43]   Commissioner Coxe continued, "What I didn't hear from all the people, the hundreds of people who complained about the abuses to the animals, that any one of them had ever gone to law enforcement to complain about that abuse." 15

[¶44]   Commissioner Schifino discusses that "[he] saw no data, no statistics," that he "would have loved to have heard from some law enforcement individuals that have actually gone in and investigated these facilities."  Additionally he recommended that the two sides be "put . . . in a real Senate hearing, and like you see on TV and Congress and have subpoena power under

---

14 Constitution Revision Commission 2017-2018, March 20, 2018, p. 126 Vol. III
15 Constitution Revision Commission 2017-2018, March 20, 2018, p. 47 Vol. III

oath, you are now under oath and I would tell them all, whoever perjures himself is going to jail and make sure that happens, because when you listen, how could you tell who was really telling the truth." 16

[¶45]   Commissioner Coxe wrote in an email to Steve Grabarcyk, Founder Emeritus, Support Working Animals, Inc., whereby Mr. Grabarcyk expressed his disappointment with the false description of greyhound mistreatment.  Commissioner Coxe replies, "If I recall correctly, Bill Schifino, Frank Kruppenbacker and I agreed that if that process had been a court of law, we would never have been satisfied the dogs were abused." See Exhibit "A."

[¶46]   From within the pari-mutuel permitholder group, the greyhound racing industry was singled out for a deprivation of their rights based on political animus. This type of baseless categorization for disparate treatment of classes is unconstitutional.

[¶47]   The Equal Protection Clause of the U.S. Constitution abhors classifications undertaken for the sake of excluding some from benefits but not others without some affirmative justification for doing so. 17

[¶48]   The Supreme Court has addressed this issue in its federal equal protection jurisprudence and the Court has held on numerous occasions that where a law is based on such animus; it will not even survive the most deferential level of scrutiny under the Equal Protection Clause.

[¶49]   In short, animus, hostility toward a particular social group, or a politically unpopular group is never a valid basis for legislation or other state action.

---

16 Constitution Revision Commission 2017-2018, March 20, 2018, p. 122 Vol. III
17 United States Dep't of Agric. v. Moreno, 413 U.S. 528, 529, 93 S. Ct. 2821, 2823 (1973)

[¶50]   The proponents of Amendment 13 have targeted the greyhound industry nationwide but West Virginia recently rightly rejected their advances to prohibit greyhound dog racing in their state, and "expects tourism figures to get a boost from visiting racing enthusiasts." 18

### OUR REPUBLIC STANDS FOR THE RULE THAT ELECTED INDIVIDUALS REPRESENT THE CITIZEN BODY *NOT* UNELECTED INDIVIDUALS REPRESENTING SPECIAL INTEREST

[¶51]   In a pure democracy, the voting majority has almost limitless power over the minority and rights can be overridden by the will of the majority. *In a republic, laws are made by representatives chosen by the people* and they must comply with a constitution specifically protecting the rights of the minority from the will of the majority.

[¶52]   This fundamental precept is most important when legislation is drafted, not by elected representatives, but by special interest groups with intent to deprive a particularly ostracized group of civil rights or liberties.

[¶53]   "Too often, however [the CRC] . . .  comes up with bad policy that hurts our economy.  This *unelected* group of commissioners has the power to bypass the state legislature and place amendments directly on the ballot with very little oversight from voters or *elected* officials" said Bill Herrle, the National Federation of Independent Business' state executive director.  19

### THE CRC WILL MOST LIKELY BE ABOLISHED

[¶54]   The CRC is likely to be abolished.  Even Governor Ron DeSantis "announced his support for repeal . . . [of the CRC]. 20

---

18 https://www.casino.org/news/bill-to-kill-west-virginia-greyhound-racing-fund-dies-in-senate/
19https://www.nfib.com/content/news/florida/nfib-urges-senate-to-vote-to-abolish-the-constitution-revision-commission/
20  https://floridapolitics.com/archives/317441-senate-poised-crc-repeal

[¶55]   The House and Senate, both Republicans and Democrats agree on abolishing the controversial CRC.  Earlier this year, Florida Senator Jeff Brandes, R.-St. Petersburg, chair of criminal and civil justice spending committee, backed a bill with bipartisan support to abolish the CRC.  He said the CRC is *too powerful and lacks accountability*.  He went on to say that, "They're *unelected individuals*, taking things and putting them in the constitution that were *not vetted in a typical process*." 21

## THE LANGUAGE OF AMENDMENT 13 FAILS TO CARRY OUT ITS PURPORTED PURPOSE

### LEGISLATIVE INTENT OF AMENDMENT 13

[¶56]   In interpreting a statute, a court should always turn first to one cardinal canon before all others . . . Courts must presume that a legislature says in a statute what it means and means in a statute what it says there.

[¶57]   When the words of a statute are unambiguous, then this first canon is also the last: "judicial inquiry is complete."

[¶58]   Here, the stated unambiguous government interest asserted in Amendment 13 is the "**humane treatment of animals**;" more specifically, *canis familiaris,* or rather, dogs.  Therefore, the intent of the legislation was the **humane treatment of dogs**.

[¶59]   A cardinal rule of construction of legislation is the rule that ***express mention signifies implied exclusion***, which the Supreme Court has employed again and again: "When a statute limits a thing to be done in a particular mode, it includes the negative of any other mode." For example, "Congress shall dispose," that means Congress and nobody else shall dispose. 22

---

21 https://www.floridabar.org/the-florida-bar-news/bills-to-abolish-the-crc-fail/
22 Transamerica Mortg. Advisors (tama) v. Lewis, 444 U.S. 11, 20, 100 S. Ct. 242, 247 (1979).

[¶60]   Since the legislation expressly mentions only greyhounds, then the unambiguous intent Amendment 13 is the ***humane treatment of greyhound***s.

[¶61]   Contrary to what most people believe, animals, under the statutes and case law of the State of Florida, are unambiguously considered tangible personal property, or chattel.

[¶62]   Tom Lee, member of the CRC, and sponsor of Amendment 13, clearly stated the intent of the bill by stating, "Now is our opportunity to finally end the mistreatment of greyhounds.23 ***Notably this amendment was never about regulating gambling***. Transcripts from the CRC hearings reveal that the amendment was always about ending the alleged mistreatment of greyhound dogs.

[¶63]   In a column in the Tampa Bay Times published November 5, 2018, entitled "Pam Bondi and Lara Trump explain their support for Amendment 13," Pam Bondi stated that she had a "heartfelt commitment to fighting any mistreatment of dogs. Treating our greyhounds with mercy is one of those issues. 24

[¶64]   Pam Bondi, Matt Gaetz and Lara Trump sponsored what the Palm Beach Post refers to as "a well-oiled fundraising machine" to help end greyhound racing by supporting the Humane Society of the United States, the out-of-state lobbyists promoting Amendment 13. 25

[¶65]   In short, Amendment 13 deprives a Florida citizen from use of its own property for the purpose of protecting its property.

[¶66]   The Fifth Amendment to the United States Constitution states that "no one shall be deprived of life, liberty or property without due process of law.

---

23  https://floridapolitics.com/archives/248460-tom-lee-files-dog-racing-ban
24 https://www.tampabay.com/opinion/columns/column-bondi-and-lara-trump-explain-their-support-for-amendment-13-20181019/
25   https://www.palmbeachpost.com/news/20190209/gop-stars-lara-trump-pam-bondi-matt-gaetz-back-greyhound-adoptions

[¶67]   The first line of the amendment states "The humane treatment of animals is a fundamental value of the people of the State of Florida."  If this were so, Florida legislators have had the opportunity to draft legislation to further this fundamental value.  Senator Jeremy Ring sponsored Senate Bill 680 entitled Companion Animals filed on October 30, 20215: "Authorizing the award of damages to an owner for loss of companionship in an action against a veterinarian for the death of his or her companion animal which resulted from the veterinarian's negligence or recklessness." This proposed legislation would have altered the classification of companion animals in a court of law from mere property value to a more protective class but Florida's legislators failed to pursue this bill.   On March 11, 2016 the bill died in Regulated Industries. 26

[¶68]   Senate Bill 680 was narrowly tailored to apply only to those who owe a higher duty of care to one's companion animal.  The bill provided rights to the owners of the companion animal to request compensatory relief in excess of mere property value in the event of negligent or reckless handling by a veterinarian.  Without expanding owners' rights in their companion animals, a civil litigant was limited to only the property value of their companion animal which could be as little as $10, or a nominal compensatory award.  Importantly, this proposed bill expanded animal *owners'* rights and yet it was rejected; this is in direct contrast to Amendment 13's allegation that "humane treatment of animals in Florida is a fundamental value."

[¶69]   With the implementation of Amendment 13, Florida citizens who utilize greyhound dogs in their commercial enterprises are divested of their fundamental right to use their property for its intended investment-backed purpose.

[¶70]   Even though individuals in the greyhound racing industry are not being divested of the *physical* property, [including the greyhound dogs, the tracks, the ticket booths, bleachers,

---

26 https://www.flsenate.gov/Session/Bill/2016/680/BillText/Filed/HTML

stands, etc.] the enforcement of Amendment 13 will prohibit the beneficial, investment-backed use of the property which is integrated in use for the purpose of greyhound dog racing.  For example: if legislation prohibited a dairy farmer from using his cow to produce milk, he will have lost the investment-backed purpose of the cow, along with all of the personal property and improvements that are integrated in the business, even though he has not lost physical possession of the cow or property.

[¶71]   Commissioner Smith of the CRC discussed a letter from Broad and Cassel [law firm for the appellee in State of Florida v. Basford, Case No. 1D12-4106 (Fla. App. July 24, 2013) to the Constitution Revision Commission drawing a distinction between the Pregnant Pig Amendment and Amendment 13 under the Bert Harris Act. 27 [Broad and Cassel had successfully litigated a takings case against the state of Florida regarding the Pregnant Pig Amendment.]

[¶72]   Under the Bert Harris Act, certain prerequisites are required under the statute. Failure to follow the procedures will result in a dismissal of the Harris Act claim.  For example, the Basford Court was precluded from ruling on the claim for compensation for under the Bert J. Harris, Jr. Private Property Rights Protection Act because the claimants failed to satisfy the pursuit notice requirements as the court strictly construes the procedural requirements. 28

[¶73]   The Pregnant Pig Amendment prohibited gestation crates for pregnant pigs.  The Basford Court held that it was an as-applied taking where the court must "take into consideration everything." The Court held that although noting that the Amendment restricted only the use of gestation creates, the Amendment resulted in the taking of all of the improvements due to their functionally integrated nature and were compensable. 29

---

27 Constitution Revision Commission 2017-2018, April 16, 2018, p. 41 Vol. III
28https://www.floridabar.org/the-florida-bar-journal/the-bert-j-harris-jr-private-property-rights-protection-act-an-overview-recent-developments-and-what-the-future-may-hold/
29 State of Florida v. Basford, Case No. 1D12-4106 (Fla. App. July 24, 2013)

[¶74]   There is no discernable difference here where the Basford Court found a violation of the takings clause for integrated personal property along with gestation crates and here the property that the greyhound industry will not be able to utilize including but not limited to real property, and functionally integrated personal property including b greyhound dogs, crates, bleachers, stands, ticket windows, etc.

[¶75]   Commissioner Smith, member of the CRC conceded that the Bert Harris Act would apply to the takings involved in Amendment 13. He stated,  "so now the dogs have a certain value *because* they're used in racing, but once -- if you do this, now the dogs lose that racing value, and even though they make great pets and have emotional value, the financial value of that racing dog now would become an issue of a Bert Harris." 30

## FUNDAMENTAL RIGHT TO ONE'S OWN
## PROPERTY AND EARN A LIVELIHOOD

[¶76]   This taking by the State of Florida is further subject to strict scrutiny because the fundamental right to use one's own property is protected by the Constitution, and the preservation of such right is one of the inherent or inalienable rights protected by the constitutions of the United States and Florida.

[¶77]   The fundamental right to earn a livelihood cannot be taken away by special enactment, but the same is subject to proper and reasonable police regulations.

[¶78]   By codifying Amendment 13 into the Florida Constitution, Florida has violated its own Constitutional provisions as well as violating the Fifth Amendment to the United States Constitution through the Fourteenth Amendment, ratified in 1868, which states that "no state shall make or enforce any law . . . [that will] deprive any person of life, liberty, or property, without due process of law; nor deny to any person within its jurisdiction the equal protection of the laws."

---

30 Constitution Revision Commission 2017-2018, April 16, 2018, p. 36-39 Vol. III)

[¶79]   Because Amendment 13 impinges on the fundamental rights expressly numerated in the Bill of Rights, strict scrutiny should apply upon review of the constitutionality of Amendment 13.

[¶80]   No due process was afforded to those that have been and will be affected by Amendment 13. This sets an extremely dangerous precedent that an individual may now be dispossessed of personal property at the pleasure of the mob in violation of one of the bedrock principles of the laws of the United States that our nation is not a pure democracy; instead it is a democratic republic. 31 For example, had a measure been placed on the ballot whereby Florida citizens could vote to commandeer second homes owned by out-of-state millionaires for community centers, the majority of voters would have approved of that as well.

[¶81]   By side-stepping the *elected* representatives of the State of Florida, the majority exercised its unlimited power over a minority group thereby forever depriving them of making a living by the use of their own property in an industry successfully regulated in the State of Florida for almost an entire century.

## THE PLAIN LANGUAGE OF AMENDMENT 13
## FAILS TO PROHIBIT GREYHOUND DOG RACING

[¶82]   Even if the plain reading of the statute appears to have a clear meaning if considered alone but . . . is inconsistent with other parts of the same statute . . . the Court will examine the entire act . . . to ascertain the overall legislative intent." 32

[¶83]   After pruning out the dependent clauses and the language that is irrelevant to this case, we are left with, "After December 31, 2020, a person authorized to conduct . . .  pari-mutuel

---

31 U.S. Const. Art. IV, §4
32 Jacksonville Prop. Rights Ass'n v. City of Jacksonville, No. 3:05-cv-1267-J-34JRK, 2009 U.S. Dist. LEXIS 136895, at *16 (M.D. Fla. Sep. 30, 20

operations and persons in this state may not wager money or any other thing of value on the outcome of a ***live dog race occurring in this state.***

[¶84]   In other words, pari-mutuel operations and persons *outside* this state *may* wager on the outcome of a live dog race occurring in this state.

[¶85]   "When a statute limits a thing to be done in a particular mode, it includes the negative of any other mode."

[¶86]   The plain language of the amendment allows the sport to continue as long as bets on the outcome of the live dog race occurring in this state are placed by persons *not* from this state.

[¶87]   Conversely, a facility hosting a live dog race from this state may simulcast the race to an out-of-state facility where wagers are not prohibited by this amendment.

[¶88]   Additionally, Amendment 13 does not prohibit wagering on the outcome of greyhound races in Florida that are simulcast from other states. [33]

[¶89]   While most voters believed that they were voting on an amendment to protect greyhounds and prohibit greyhound racing; a plain reading of the text, provides a contrary result.

[¶90]   With the passage of Amendment 13, the Florida Constitution, Article 10, §32, now directs the Florida legislature to enact legislation to civilly or criminally penalize owners of racing greyhounds who would use their personal property for its intended investment-backed purpose thus ending the dog racing industry in Florida.

[¶91]   The issue of simulcasting of races was discussed at length during the hearings of the CRC and simulcast of live dog racing coming into or out of Florida is not prohibited by the plain text of the amendment.[34]

---

[33] Constitution Revision Commission 2017-2018, April 16, 2018, p. 36-39 Vol. III)
[34] Id.

[¶92]   It may have been the intent of this legislation to forbid greyhound racing, but the language implemented by this amendment fails its purpose.

## CAUSES OF ACTION

### COUNT ONE
**Violation of the Equal Protection Clause: Unconstitutional Animus**

[¶93]   Plaintiffs repeat and reallege the allegations contained in Paragraphs 1 through 92 above as though fully set forth herein.

[¶94]   The Supreme Court has ruled that "if the adverse impact on the disfavored class is an apparent aim of the legislature, its impartiality would be suspect." 35

[¶95]   The Supreme Court has dealt with the issue of animus in cases dealing with politically unpopular groups.  For example, in 1973 in United States Dep't of Agric. v. Moreno, 413 U.S. 528, 529, 93 S. Ct. 2821, 2823 (1973), the Court declared unconstitutional a provision amending the Food Stamp Act in 1971 which denied federal food assistance to households containing members who were unrelated, noting that the intent was to harm the hippie population. Under traditional equal protection analysis, this classification would have been sustained, however the purposes of the legislation to prevent the so-called "hippies" and "hippie communes" from participating in the food stamp program.  The Court held the challenged classification clearly could not be sustained, that it was a bare congressional desire to harm a politically unpopular group and cannot constitute a legitimate government interest.

[¶96]   The Supreme Court revisited this type of animus again in Romer v. Evans, 517 U.S. 620 (1996), when a Colorado Constitutional Amendment had been enacted by popular referendum; the purpose of which was to eliminate and prevent future adoption of any antidiscrimination

---

35 Railroad Retirement Bd. v. Fritz, 449 U.S. 166, 181, 66 L. Ed. 2d 368, 101 S. Ct. 453 (1980) (STEVENS, J., concurring)

protections based on homosexual, lesbian, or bisexual status. The trial court proceeded directly to rational basis review and upheld the amendment. On certiorari, the Supreme Court identified "this sort" of law as incompatible with our constitutional tradition.

> [L]aws singling out a certain class of citizens for disfavored legal status or general hardships are rare. A law declaring that in general it shall be more difficult for one group of citizens than for all others to seek aid from the government is itself a denial of equal protection of the laws in the most literal sense. 36

[¶97]   Moral disapproval of homosexuality, animus towards gays and lesbians or simply a belief that a relationship between a man and a woman is inherently better than a relationship between two men or two women, this belief is not a proper basis on which to legislate.

[¶98]   Disqualification of a class of persons from right to seek specific protection from law is unprecedented in U.S. Supreme Court jurisprudence.   Discriminations of an unusual character especially suggest careful consideration to determine whether they are obnoxious to the Equal Protection clause. 37

[¶99]   Here, the greyhound racing industry has been targeted for disparate treatment based on unsubstantiated evidence.   As a result, the greyhound racing industry is disliked nationwide. Opponents of the greyhound racing industry have a financial war chest and can always outspend the greyhound racing industry in spreading their narrative. The negative claims against the industry go relatively unchallenged because the greyhound industry lacks the funds to counter the claims.

[¶100]  CRC members requested Senate-type hearings to gather facts under oath and not unverified one-sided statements.

---

36 Romer v. Evans, 517 U.S. 620, 116 S. Ct. 1620, 1623 (1996)
37 Romer v. Evans, 517 U.S. 620, 633, 116 S. Ct. 1620, 1623 (1996)

[¶101]  This type of disparate treatment of the greyhound industry, depriving them of their rights to use their own investment-backed property to earn a livelihood is repugnant to the Equal Protection clause of the U.S. Constitution.

[¶102]  The Supreme Court's holdings regarding similar animus cases instruct case law that this type of animus does not even pass a rational basis review.

## COUNT TWO
### Violation of the Takings Clause (Fifth and Fourteenth Amendments of the United States Constitution) 42 U.S.C. § 1983

[¶103]  Plaintiffs repeat and reallege the allegations contained in Paragraphs 1 through 92 above as though fully set forth herein.

[¶104]  Plaintiff states this cause of action against Defendant in her official capacities for purposes of seeking declaratory and injunctive relief, and to challenge Article 10, §32 of the Florida Constitution both facially and as applied.

[¶105]  By eliminating wagering on dog races Article 10, § 32 of the Florida Constitution deprived the property owners engaged in the commercial enterprise of racing dogs in the State of Florida of substantially all economically beneficial or productive use of their property and return on their investments.

[¶106]  *State v. Basford* is instructive on the issue of whether or not Amendment 13 results in an as-applied taking. The Basford Court held that everything has to be taking into consideration under the Penn Central analysis.  The Court held that although the Amendment restricted only the use of gestation crates; the trial court found that the Amendment resulted in the taking of all of the improvements due to their "functionally integrated nature." 38

---

38 State of Florida v. Basford, Case No. 1D12-4106 (July 24, 2013)

[¶107] In the case at bar, there will be claims for real property under the Bert Harris Act, personal property functionally integrated in nature to racing, to include but not be limited to bleachers, tracks, stands, ticket booths, kennels, etc. There will be no beneficial use for bleachers, tracks, or stands, ticket booths or kennels if there are no greyhound races.   Amendment 13 amounts to a per se regulatory taking as it denies all economically beneficial use of Plaintiffs' property.   Even though the state is not confiscating this property, it will no longer have any beneficial use to the Plaintiffs.

[¶108] Plaintiffs stand to lose all investment-backed expectations in the greyhound dogs because their value is tied to their racing ability. Greyhound racing puppies can fetch a great deal of money.  If racing is prohibited, these viable racing dogs will not be able to race and will instead be given away to adoption leagues and the Plaintiffs alone will bear all the economic loss.

[¶109] The state has asserted no legitimate government interest for dispossessing the greyhound industry of the use of their personal property for its investment-backed purpose.  The only purported government interest asserted in Amendment 13 is to protect personal property belonging to another.  Legitimate government interests include the health, safety, morals or the general welfare. 39  This purported interest serves none of these stated interests and only serves to bankrupt a once thriving Florida industry.

### COUNT THREE
### Deprivation of Equal Protection (42 USC § 1983 and the Fourteenth Amendment of the United States Constitution) 42 U.S.C. § 1983

[¶110] Plaintiffs repeat and reallege the allegations contained in Paragraphs 1 through 92 above as though fully set forth herein.

---

39 Orange Cty. v. Costco Wholesale Corp., 823 So. 2d 732, 738 (Fla. 2002)

[¶111] Plaintiff states this cause of action against Defendant in her official capacities for purposes of seeking declaratory and injunctive relief, and to challenge Article 10 §32 of the Florida Constitution both facially and as applied.

[¶112] The State of Florida acted arbitrarily by eliminating wagering on dog racing and should have regulated wagering on dog racing not eliminated wagering on dog racing, thus treating wagering on dog racing the same as wagering on horse racing.

[¶113] Amendment 13 denies equal protection because the State of Florida allows wagering on all other animal racing and only prohibits wagering on dog racing; one particular type of animal racing now considered politically unpopular.

[¶114] Amendment 13 deprives the Plaintiffs' fundamental right to use their property to earn a living like other similarly situated industries, i.e., horse racing, in the state of Florida.  not rationally related to a legitimate governmental purpose.  Amendment 13 interferes with a fundamental right and should be reviewed under strict scrutiny.

## COUNT FOUR
### Impairment of Contracts (Tenth Amendment of the United States Constitution)

[¶115] Plaintiffs repeat and reallege the allegations contained in Paragraphs 1 through 92 above as though fully set forth herein.

[¶116] Plaintiff states this cause of action against Defendant in her official capacities for purposes of seeking declaratory and injunctive relief, and to challenge Article 10 §32 of the Florida Constitution both facially and as applied.

[¶117] Article 10, § 32 of the Florida Constitution unreasonably and unnecessarily impaired the obligations of private contracts.  "A state can no more impair the obligation of an antecedent contract by adopting a Constitution or amending its Constitution than by passing or amending a statute."  State ex rel. Woman's Ben. Ass'n v. Port of Palm Beach Dist., 121 Fla. 746,

761, 164 So. 851, 857 (1935).  The passage of Article 10, § 32 of the Florida Constitution impaired the contracts of all people engaged in the business of dog racing in the State of Florida.]

## COUNT FIVE
## VIOLATION OF SUBSTANTITVE DUE PROCESS

[¶118]  Plaintiffs repeat and reallege the allegations contained in Paragraphs 1 through 24 above as though fully set forth herein.

[¶119]  Plaintiffs seek to ensure that their fundamental right to their property is recognized by the State of Florida.

[¶120]  Article 10, §32 of Florida's Constitution denies the Plaintiff's property rights without due process of law, as guaranteed under the Fourteenth Amendment to the Constitution of the United States and the Constitution of the State of Florida.

[¶121]  The state of Florida has enacted a constitutional amendment that decreases the value of Plaintiffs' property and deprives them of the use thereof in their commercial enterprises.

[¶122]  The passage of Amendment 13 has left the property owners with no economically viable use of their property.

[¶123]  Plaintiffs are unfairly shouldering a burden that should be borne by the public as a whole because Amendment 13 offers no benefits whatsoever, yet it is serves as a severe detriment to the Plaintiffs.

## RELIEF REQUESTED

[¶124]  Plaintiffs respectfully request that this court enter judgment in Plaintiffs' favor and against Defendants and awarding the following relief:

[¶125]  Preliminarily and permanently enjoining the enforcement of Article 10 §32 of the Florida Constitution. The declaratory and injunctive relief requested in this action is sought against each Defendant; against each Defendant's officers, employees, and agents; and against all persons

acting in active concert or participation with any Defendant, or under any Defendant's supervision, direction, or control.

[¶126] A declaration that Article 10 §32 of the Florida Constitution is unconstitutional under the Equal Protection Clause, Due Process, and the Fifth and Fourteenth Amendments of the United States Constitution.

[¶127] Costs and attorneys' fees pursuant to 28 U.S.C. §§ 1983 and 1988, and any other applicable statue or authority.

[¶128] Any other relief this Court may grant in its discretion.

Respectfully Submitted,

Dawn M. Alba                          Signed: _Dawn M. Alba, Esq._
Alba Law Office, PA                   Fla. Bar Number:  112814
3714 South Olive Avenue
West Palm Beach, FL  33405
(561) 584-0023
Dawn@Albalawoffice.com

SERVICE LIST:

Blaine H. Winship (FBN 356913)
Special Counsel
Office of the Attorney General of Florida
The Capitol, Suite PL-01
Tallahassee, Florida 32399-1050
Tel.: (850) 414-3300
Fax: (850) 488-4872
Blaine.Winship@myfloridalegal.com
Counsel for Attorney General Ashley Moody